Argued July 12, reversed and remanded October 10, 1922, rehearing denied January 9, objection to cost bill sustained in part January 16, motion to modify judgment denied February 13, 1923.

## GARBER *v.* BRADBURY.

### (209 Pac. 477.)

**Trover and Conversion—Punitive Damages Recoverable.**

1. The ordinary measure of damages in trover is the value of the property taken, but punitive damages may be inflicted under special circumstances of oppression.

**Trover and Conversion—Evidence Bearing on Punitive Damages Held Inadmissible Under Pleading.**

2. Where there was nothing in the complaint to authorize any other measure of damages than the value of the crops converted, it was error to admit plaintiff's testimony as to his need of milk for a child, and as to defendant's wealth, introduced for the purpose of inducing the jury to inflict punitive damages.

**Partnership—Cross-bill Held Properly Stricken Out as Disclosing No Element of Partnership.**

3. A cross-bill in which defendant averred the leasing of land from himself to plaintiff, called it a partnership, and prayed for a decree dissolving the partnership and for an accounting, *held* properly stricken out as disclosing no element of partnership requiring the interposition of a court of equity.

From Klamath: D. V. KUYKENDALL, Judge.

Department 1.

REVERSED AND REMANDED. REHEARING DENIED. OBJECTIONS TO COST BILL SUSTAINED IN PART. MOTION TO MODIFY JUDGMENT DENIED.

For appellant there was a brief and oral argument by *Mr. H. M. Manning.*

For respondent there was a brief and oral argument by *Mr. W. M. Duncan.*

BURNETT, C. J.—Claiming to have been a tenant on defendant's farm for one year from January 1, 1919, the plaintiff avers in substance that the defendant converted to his own use the share of the crops belonging to the plaintiff under the lease, totaling in value $2,373.50, against which the plaintiff allows a credit of $719.69, money which the defendant advanced to the plaintiff in accordance with the defendant's agreement properly to finance the farm. The net balance is thus $1,653.81. After describing the manner of conversion, in that the defendant executed a bill of sale of all the property to his son and placed him in possession, the complaint closes with the allegation that the defendant "refused to allow him grain to feed the stock and plaintiff's turkeys, as he had agreed to do, so that the plaintiff could not further fulfill his contract and had to sell his turkeys at a sacrifice; and that the defendant has locked said grain up in the granary and has refused to allow this plaintiff his undivided one-half interest or any interest in said crops, to the damage of this plaintiff in the sum of three thousand five hundred dollars ($3,500)."

After some attempted denials, the defendant makes some allegations of damages arising from the plaintiff's breach of the contract of leasing as the defendant avers it to be, and demands reimbursement from the plaintiff in the sum of $3,039.18. In addition to this, the defendant filed what he termed a "cross-complaint in equity," whereby he averred a leasing

of the land from himself to the plaintiff, called it a partnership and prayed for a decree dissolving the same and for an accounting between the parties. The Circuit Court struck out the so-called cross-bill.

The plaintiff replied to the answer of the defendant, challenging the counterclaim in every particular, and demanded judgment against the defendant for $39.50 in addition to the amount asked in his complaint.

There was a jury trial, resulting in a verdict in favor of the plaintiff in the sum of $3,151.89, and from the ensuing judgment the defendant appeals.

The defendant moved to vacate the judgment and set aside the verdict "and to enter an order of *remittitur,* requiring the plaintiff to reduce his judgment to an amount that is not excessive," on the grounds that the verdict is against the law and contrary to the evidence; that the jury awarded excessive damages; and that there is no evidence sufficient to warrant the amount found by the jury for punitive damages. This motion, however, was overruled, and this action of the court constitutes one of the assignments of error.

During the course of the trial, the plaintiff was on the stand as a witness in his own behalf and was asked this question by his counsel: "Did you have to have milk for any members of the family?" This was objected to by the defendant's counsel as immaterial. The question proceeded: "A small daughter?" And the plaintiff answered, "Yes." The objection was renewed. The court said: "I think it would be admissible on the question of the motive for it, the state of mind." Again, the plaintiff was permitted to inquire into the value of the ranch involved, which was objected to, and over the defendant's objection

the witness was allowed to testify: "I heard him say that he valued it at $20,000." The only object of these two questions, manifestly, was to induce the jury to inflict punitive damages.

1. The ordinary measure of damages in trover, as taught by *Fish* v. *Nethercutt,* 14 Wash. 582 (45 Pac. 44, 53 Am. St. Rep. 892), a sample of the great weight of authority, is the value of the property converted. There are precedents, it is true, indicating that under special circumstances of oppression and the like, punitive damages may be inflicted for the taking of property. Such circumstances, however, must be alleged, before the jury can be allowed to punish the offending party. There is nothing in this case in the way of allegation, to support any such procedure.

2. The complaint is devoid of anything about the furnishing of a cow or the requisites of the infant child in the way of lacteal supply, and hence the interrogatories on that subject were clearly immaterial and should have been excluded.

The same may be said as to the value of the defendant's land involved. In some cases, such, for instance, as slander or libel and perhaps others, it may be permissible to show the condition of the offending defendant as to wealth, so as to enable the jury properly to amerce him for his tort, on the theory that a verdict of $100 damages would be severe punishment to a poor man but of no moment to a millionaire. But, as before stated, there is nothing in this case to authorize any other measure of damages than the mere value of the property converted.

The utmost verdict that could have been rendered in favor of the plaintiff was the value of the converted goods as alleged in the complaint. Adding the items of the value of the property as given in

that pleading makes an aggregate of $2,483.50, instead of $2,373.50, as stated in the complaint. Deducting $719.69 from the correct aggregate leaves a balance of $1,763.81, which was the limit of any verdict that could be returned. The jury evidently proceeded upon the theory that it was entitled to punish the defendant. The evidence alluded to tended to encourage that idea. It was erroneous to admit it, and for this the judgment must be reversed and the cause remanded for further proceedings.

3. There was no error in striking out the cross-bill, for it disclosed no element of partnership or of anything else requiring the interposition of a court of equity.

REVERSED AND REMANDED. REHEARING DENIED. OBJECTIONS TO COST BILL SUSTAINED IN PART. MOTION TO MODIFY JUDGMENT DENIED.

HARRIS, RAND and McCOURT, JJ., concur.