Argued April 5; affirmed May 9; rehearing denied June 20, 1933

DONIS *v.* SAWYER SERVICE, Inc., ET AL.

(21 P. (2d) 776)

*J. C. Veazie,* of Portland (Veazie & Veazie and C. E. Zollinger, all of Portland, on the brief), for appellant.

*Paul Harris,* of Portland (Davis & Harris, of Portland, on the brief), for respondent.

ROSSMAN, J.  The sole averment of the complaint which identifies the three defendants with the sign and accuses them of negligence is the following:

"On or about the 17th day of February, 1931, the plaintiff was passing in front of the premises maintained by the defendant, Chris D. Haleston, commonly known as the 'Paramount Drug Co.' which is situate

on the northwest corner of said Broadway and Salmon street, when she was violently struck by the display sign which had been precipitated from the place where it had been hung on the premises of the defendant Chris D. Haleston. * * * Plaintiff alleges that the defendants were then and there careless and negligent in that said defendants so carelessly, recklessly and negligently hung and/or maintained said display sign that the same was caused to be violently precipitated on this plaintiff as she was passing said premises as aforementioned.''

■■ The appellant, in its reply brief, challenges the sufficiency of the complaint, contending that the expression ''and/or'' deprives the foregoing allegation of certainty. The expression just quoted is an unfortunate one. The capacity of a complaint to give notice of the line of attack is the principal requirement that it must now possess: Clark on Code Pleading, p. 74. The sufficiency of the complaint was not tested by motion or demurrer. During the course of the trial the appellant at no time claimed surprise, and apparently had no difficulty in understanding the nature of the claim upon which the plaintiff relied. We find that this contention lacks merit.

The evidence indicated that the defendant, Chris D. Haleston, owned a drug store operated upon the ground floor of a building located at the northwest corner of Broadway and Salmon street, Portland. It also indicated that the appellant, Sawyer Service, Inc., is engaged in the business of developing films and making prints therefrom. In the conduct of Haleston's business he received from his customers photographic films and intrusted their development to the appellant. The Sawyer Company supplied him with advertising material concerning film development and printing. Haleston testified that in May of 1930, ''I ordered a

sign, an interior sign," from the appellant. Before the sign was delivered he left Portland upon a trip to New York from which he did not return for several weeks. During his absence V. J. Marincovich was the manager of his store, and while he was in charge, Cyril Justin, advertising manager for the appellant, brought the sign and asked Marincovich to select the place where it should be hung. Marincovich testified that he refused to do so. Justin hung the sign on the exterior wall of the building facing upon Salmon street and about eight to ten feet above the sidewalk. He testified that Marincovich approved the place that he selected. The sign was a sheet of metal 14 by 20 inches in size upon which was printed in large letters, "Developing and Printing." Under these words was the picture of a kodak film carton. The name of the Sawyer Company did not appear upon the sign. It was suspended by two hooks from an iron bracket, the perpendicular part of which was fastened to the masonry wall by three screws driven into holes partially filled with lead slugs so that as the screws, one and three-fourths inches long, entered they crowded the lead tightly into the holes. To the outer end of the arm of the bracket was fastened a chain, the other end of which was fastened by a screw to the wall at a point somewhat higher than the level of the bracket. The chain helped to steady the arm. The sign and its bracket weighed about eight pounds. About a month after Justin had fastened the sign in position he returned, inspected it, and found it secure. In the seven months that followed this inspection, and before the accident occurred, Justin saw the sign several times as he passed by, but observed no need for giving it attention. No charge was made for the sign nor for the service performed in placing it in position. The

evidence does not indicate whether Haleston and the appellant had any agreement governing the photographic work done by the latter for the former, nor whether Haleston was at liberty to send his work wherever he chose. When Haleston returned from New York he saw the sign and permitted it to remain there. Two months prior to the accident one of the two hooks by which the sign was suspended from the arm of the bracket gave way. When Marincovich's attention was directed to that fact he made the necessary adjustment. When plaintiff's counsel, upon cross-examination of Haleston, directed him to: "Tell us about your sign," Haleston replied: "It wasn't my sign.". He testified that he observed the sign several times and that, although he did not know how it was fastened to the wall, "it looked secure enough". When asked if he had made any effort to determine how the sign was held in position, he replied: "No, it was none of my business". Justin testified that he did not inspect the sign upon the several occasions when he was in the vicinity of Broadway and Salmon street "for the simple reason that it—I, at the time that I saw it, no thought occurred to me that it would need inspection".

During the course of a severe windstorm on February 18, 1931, the bracket somehow broke loose from the building, and the sign, in falling to the ground, struck the plaintiff who was then walking along Salmon street, inflicting upon her the injury for which she seeks redress in this action. The evidence does not disclose the cause which loosened the bracket from the building, unless we may infer that the windstorm was the cause. After the sign had fallen, it was observed that the holes in the masonry wall were somewhat larger than when Justin made them.

The above is a resume of the evidence upon which the plaintiff relies to prove that the appellant had a proprietary interest in the sign, or that it and Haleston were jointly responsible for its safe maintenance.

The first two assignments of error are based upon the orders of the circuit court which overruled appellant's motions for a nonsuit and for a directed verdict. Appellant contends that the evidence shows that after it had placed the sign in position Haleston became its owner, and that, as owner, he was solely liable in this action, even though the falling of the sign may have been due to some negligence of the appellant when it installed the sign. The appellant, of course, denies negligent installation, and contends that the services which it performed in erecting the sign were those of an independent contractor whose liability terminates with the acceptance of the work by the owner.

It is well established that if a verdict is sustained by competent, substantial evidence, we must yield effect to it: *Leonard v. King,* 128 Or. 216 (274 P. 116). The mere fact that the evidence concerning the installation and subsequent maintenance of the sign may be free from serious dispute does not of itself demand that the court should take the case away from the jury and pronounce judgment, for if men can reasonably draw different inferences from the testimony, one or more of them favorable to the plaintiff, she was entitled to have the matter submitted to the jury for its determination: *Ford v. Schall,* 114 Or. 688 (236 P. 745). In its deliberations the jury was not confined to the direct, positive evidence. If the administration of justice had to wait until a party upon whom rested the burden of proof could obtain that kind of evidence, many just claims could never be redressed. The jury owes a duty not only to weigh the direct, positive evi-

dence, but also to draw from that evidence all inferences which the experiences of men indicate are sound. It seems to us that different conclusions can readily be drawn from the testimony reviewed above. In these days when much of our conduct is prompted by thought of personal commercial advantage one individual might believe that when the appellant erected the sign, pursuant to Haleston's request, its officers thought only of the benefits which would accrue to the Sawyer Company from a sign placed in the advantageous location which Haleston was donating free of charge. Haleston would, of course, derive a benefit from the sign, but it may be that the appellant was not thinking of him but of itself. The jury could properly infer that the appellant had no thought of making to Haleston a gift of the sign, which was, in a measure, a trade-mark of its own. Upon the other hand, another individual might infer that the appellant, when it brought the sign to Haleston's store, erected it, and returned a month later to make a final inspection of the installation, thereby made a gift to Haleston of the sign and retained to itself no control over the sign. To us, it seems that both of these conclusions can reasonably be drawn from the evidence. Appellant and Haleston knew precisely the terms of the agreement existing between them. Evidently this agreement persuaded Haleston that he could properly request the appellant to place this sign upon his walls, and the relationship which the two sustained to each other persuaded appellant to comply with Haleston's request. The plaintiff, as a stranger to that contract, could not be expected to reveal its terms. Whatever were the terms of the agreement, the appellant did not see fit to disclose them. This silence was a proper subject-matter for inferences, since our statute authorizes adverse deductions to be drawn

against the party who has it in his power to disclose a fact but fails to do so: § 9-2001, Oregon Code 1930; Wigmore on Evidence (2d Ed.) § 278; *Moore v. McDonald,* 122 Cal. App. 61 (9 P. 2d) 556). We conclude that the court did not err when it overruled appellant's motions for a nonsuit and for a directed verdict.

■ Appellant's next two assignments of error are based upon the instructions. The criticism of these instructions is predicated largely upon the contention of the appellant that the evidence disclosed that it had no proprietary interest in the sign and owed no duty to maintain it safely. Since we are of the opinion that the evidence is capable of sustaining a conclusion that the appellant owned the sign, either individually or jointly with Haleston, it follows that we do not agree with the contentions upon which these assignments of error are based. Appellant also argues that a portion of the instructions attacked by these assignments of error is lacking in clearness. Construed by itself the part of the instructions referred to is subject to this criticism, but other portions overcome this incompleteness. Instructions are to be construed as a whole and not in parts.

It follows from the foregoing that the judgment of the circuit court is affirmed.

BELT and KELLY, JJ., concur.

RAND, C. J., did not participate in this decision.