Argued January 5; affirmed February 23, 1944

# CROSS *v.* CAMPBELL ET AL.

(146 P. (2d) 83)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, KELLY and HAY, Associate Justices.

*Arthur E. Prag,* of Portland (Bruce Spaulding, of Salem, on the brief) for appellants.

*Francis E. Marsh,* of McMinnville (Vinton, Marsh & Marsh, of McMinnville, on the brief) for respondent.

ROSSMAN, J.

This is an appeal by the defendants, two in number, from a judgment, based upon a verdict, entered against them in an action of conversion. The verdict found that the plaintiff's damages were $1171, compensatory damages, and $1300, punitive damages. The attached judgment is in the aggregate of these two sums, $2471. The items of property, which the complaint avers the defendants took, were parts of a small sawmill. The answer, apart from an admission of the corporate character of the defendant, Coastal Lumber Company, denied all averments of the complaint. The

other defendant was the president and manager of the corporate defendant.

Before setting forth the contentions of the appellants, we direct attention to a rule of this court which promotes facility and enables an appellant to place before this court effectively the errors which, he believes, the trial court committed; the rule says:

> "No alleged error of the circuit court will be considered by this court unless regularly presented in the assignments of error contained in the appellant's opening brief, * * * ." (Rule 2.)

The appellant's brief nowhere employs the term "assignment of error." It sets forth five contentions each under the title of "point", and the abstract of record quotes the bill of exceptions which contains ten exceptions. Procedure somewhat akin to this has been pursued in other appeals. May we not, therefore, with ill will for no one, call attention again to the above rule.

The rule above quoted demands that an appellant specify in his brief, one by one, in the form of assigments of error, the various steps taken in the circuit court which, he believes, constituted reversible error. An assignment of error is a challenge of the correctness of something done in the circuit court against the purported rights of the appellant. Unlike a point, which may fail to mention what was done in the trial court, an assignment of error is an express statement that error was committed in the part of the proceeding which the assignment singles out. Its purpose is to bring clearly to the attention of the respondent and this court some act or ruling made in the trial court which the appellant claims was prejudicial to his rights.

It is, in fact, a complaint against something done in the trial court and, such being its nature, it has been referred to as a pleading: *Salene v. Isherwood,* 74 Or. 35, 144 P. 1175. The fact that an assignment of error specifies what was done and disputes its correctness narrows the succeeding argument to the course which was actually pursued and thereby avoids dispute concerning abstractions. An assignment of error differs from a point or a proposition in that it focuses attention upon something which actually occurred; it should, however, resemble a point in its pointedness. If the trial judge, in application of a principle of law which the appellant claims was erroneous, made more than one ruling adverse to the appellant, it is permissible for the sake of conciseness to include all of the rulings within a single assignment of error, provided that all are susceptible to like treatment. It is in the argument which follows an assignment of error, rather than in the abstract of record, that the exception and its related matters may be included.

Notwithstanding the situation mentioned, we shall deem the points as assignments of error. They are, respectively:

1. "The complaint does not state facts sufficient to constitute a cause of action."

2. "Under the facts of this case it was necessary for the plaintiff to plead a demand in his complaint and inasmuch as there was no demand pleaded, defendants' motion for non-suit should have been granted."

3. "Plaintiff having failed to plead the circumstances surrounding the alleged conversion would not be entitled to have the matter of punitive damages submitted to the jury."

4. "The plaintiff did not show ownership in himself of the items of property pleaded in his

complaint, with the exception of the two items he had purchased subsequent to his acquisition of the millsite.''

5. ''The ramp, boiler-setting, mill and machinery became part of the realty and belonged to the Polk Operating Co. and did not belong to the plaintiff or his predecessors in interest.''

Before leaving the matter of the lack of assignments of error, we direct attention to the fact that only the second of the points specifies the action which the trial judge took.

A statement of the facts is essential to a consideration of the assignments of error. The conversion, if it took place, occurred upon a tract, five acres in extent, situated near Grand Ronde in Polk County. The tract, which was a millsite, was owned at the time of the alleged conversion by a corporation entitled Polk Operating Company. Prior to June 4, 1941, there stood upon the site a small sawmill which the plaintiff claims he owned. June 3 the mill took fire and most of it was consumed. In the latter part of 1941 the defendant, Coastal Lumber Company, acquired a lease to the millsite and constructed a new mill upon it. According to the plaintiff, the property described in the complaint was upon the millsite when the defendants proceeded with the construction of the Coastal Lumber Company's mill. The plaintiff contends that the defendants (a) refused to permit him to remove the property; (b) sold some of it; and (c) incorporated several of the items in the mill which they built.

The defendant, Coastal Lumber Company, was incorporated July 7, 1941. The other defendant, Mark D. Campbell, is the manager and president of the corporation just mentioned.

In and prior to 1936 the aforementioned millsite was owned by a corporation entitled Miami Corporation. In or before that year that concern leased the site to an individual by the name of E. E. Weaver who built upon the property a small mill. Ira Withrow, superintendent for the Polk Operating Company, as a witness for the defendants, testified: "Weaver assigned the mill over to Bieg." The latter's full name was Earlene G. Bieg. Other evidence indicates that the transfer to Bieg was made in 1936. About the time of that sale the Polk Operating Company bought the millsite which is surrounded by a large tract of timberland, title to which reposed in the Polk Operating Company. The stockholders of the latter also own the Willamina-Grand Ronde Railroad Company by which lumber manufactured in this mill and logs cut in the adjacent area make their way to market. June 29, 1940, the aforementioned Bieg and an individual named Frank Ojala entered into a contract whereby Bieg sold the mill to Ojala at a price of $2500. The contract acknowledged receipt of $500 of the purchase price. The terms of the contract graduated payment of the balance of the purchase money according to the amount of lumber sawed in the mill; subject, however, to a minimum payment of $75 per month. One of the provisions of the contract follows:

> "This contract shall not be sold or assigned by the second party except upon the written consent of the first party."

The first party was Bieg. Prior to the execution of that contract the aforementioned lease had been terminated, but on June 20, 1940, the Polk Operating Company, as lessor, and Ojala, as lessee, executed a lease

which described the millsite.   One of the provisions of the lease stated:

> "The lessee shall erect a mill and one office building upon said property."

Another of its provisions recited:

> "The lessee agrees, upon the termination of this lease, to remove his property promptly and return said premises at the expiration of this lease in as good condition as they are now in, fire and other unavoidable casualties excepted."

Still another of its provisions said:

> "The lessee shall not assign this lease without the written consent of the lessor first obtained."

In explanation of the term of the lease which required Ojala to erect upon the millsite a mill and an office building, when, as a matter of fact, both structures were built four years prior to that time, we have testimony given by Withrow wherein he explained that the lease to Ojala was a copy of the leases previously possessed by Bieg and Weaver.   According to Withrow, all three were couched in the same language. January 24, 1941, Ojala, as party of the first part, and the plaintiff, as party of the second part, executed an agreement whereby Ojala sold to the plaintiff "that certain mill and the machinery attached thereto known as 'Weaver Mill'" and also "that certain contract which the party of the first part has to purchase from Earlene G. Bieg" the mill.   The contract required the plaintiff to pay for the property $5000.   Receipt of a substantial initial payment was acknowledged and the balance of $2775, which was also the sum which Ojala still owed to Bieg, was rendered payable to the latter.   The contract bound Ojala "to sell, trans-

fer and assign unto the said second party, as a part of the consideration hereof, that certain lease now existing between himself and the Polk Operating Company, for the lands upon which said mill is situated." The aforementioned Withrow testified specifically that he consented to the transfer from Ojala to the plaintiff of the lease which his company had granted to Ojala. He also admitted that neither he nor the Polk Operating Company claimed ownership of the mill or any of its equipment. The millsite was the only property which interested them. It is clear that the Polk Operating Company claimed ownership of nothing which was upon the millsite after the fire. Bieg was neither a party to this case nor a witness at the trial. It will be recalled that the contract which he and Ojala signed provided that Ojala should not assign it without Bieg's written consent. Bieg's written consent does not appear upon the instrument, but there is substantial evidence in the record that Bieg made no claim to the ownership of anything that was left upon the millsite after the fire. To the contrary, he, according to the evidence, conceded the plaintiff's ownership of the property.

The above is a brief review of the evidence which shows whether or not the plaintiff possessed title to the property which remained after the fire. We will later give a better impression of the nature of the property.

We shall now consider the assignments of error. We have already stated the first in the language of the plaintiff's brief. It challenges the sufficiency of the complaint as the statement of a cause of action.

Neither a demurrer nor a motion was filed against that pleading. The complaint alleges

"On or about the 15th day of July, 1941, the plaintiff was the owner and entitled to the possession of the following described personal property * * *. On or about the 15th day of July, 1941, the defendants wrongfully deprived the plaintiff of the aforesaid property and the said defendants on or about the 15th day of July, 1941, wrongfully and maliciously converted the above-mentioned property to their own use."

In support of their contention, the appellants say that the complaint does not say that the plaintiff was the owner of the property at the time of the alleged conversion. They continue

"It is defendants' contention that in an action for conversion it must be pleaded that at the time of the conversion the plaintiff was the owner or entitled to the immediate and exclusive possession of the property."

■■ It is not necessary in an action of this kind for the complaint to allege the precise time when the conversion occurred: *Corona Coal & Iron Co. v. Bryan,* 171 Ala. 86, 54 So. 522, Ann. Cas. 1913A, 878, and annotation. An illustration is *Osborne v. Eldriedge,* 130 Or. 385, 280 P. 497. It is essential, however, that it should appear from the complaint that the plaintiff possessed some kind of property interest in the goods at the time of their alleged conversion: *Hunt v. First National Bank of Halfway,* 102 Or. 398, 20 P. 564.

The phrase "on or about the 15th day of July, 1941," twice employed in the complaint, does not necessarily mean that the incident concerning which the phrase was employed occurred on July 15, 1941. Therefore, when literally construed, those words do

not say that the plaintiff was the owner of the property described in the complaint at the time of the alleged conversion.

Even a cursory examination of our decisions in conversion cases readily reveals that phrases similar to the one employed by the plaintiff have been many times employed. A few instances are: *Derby v. Newton,* 142 Or. 427, 20 P. (2d) 439; *Union Central Life Insurance Co. v. Deschutes Valley Loan Co.,* 139 Or. 222, 3 P. (2d) 536, 8 P. (2d) 587; *Hughson v. Northwestern National Bank,* 126 Or. 43, 268 P. 756; *Jeffries v. Pankow,* 112 Or. 439, 223 P. 745, 229 P. 903; *Daniels v. Foster & Kleiser,* 95 Or. 502, 187 P. 627; *Geren v. Hollenbeck,* 66 Or. 104, 132 P. 1164; *Lee Tung v. Burkhart,* 59 Or. 194, 116 P. 1066; *Wheeler v. McFerron,* 33 Or. 22, 52 P. 993; and see *Smith v. Dunn,* 165 Or. 418, 107 P. (2d) 985.

■ The primary purpose of a pleading is to give fair notice to court and opponent of the demands which the pleader is making. It is rare that more than that is expected of a pleading. A glance at the aforementioned decisions will show that no one suffered inconvenience through the failure of the pleader in those cases to employ a term more precise than "on or about." In fact, in most of them the employment of that loose term was not mentioned.

■ It is equally evident that in the case now before us the failure of the complaint to allege that at the moment of the conversion the plaintiff was owner, did not mislead the defendants and did not inconvenience the trial. The absence of the required precision was not mentioned during the course of the plaintiff's presentation of his evidence. And, as we have already indicated, the sufficiency of the com-

plaint was challenged by neither motion nor demurrer. The defect, which the defendants now insist upon, was not mentioned until the close of the plaintiff's evidence when the defendants moved for a nonsuit—if, in fact, it was mentioned then.

That motion, as it appears in the record, was "upon the following grounds:

"The first ground: That the Complaint does not state facts sufficient to constitute a cause of action;

"Second: That there has been no demand pleaded * * *;

"Third: * * * they are relying upon this instrument * * * on the following ground: That the only evidence in this case conclusively shows that the property was being held in an endeavor to know who the true owner was."

Thus, although other bases for the motion were mentioned, no claim was made that the absence of averment that the plaintiff was owner at the precise time of the conversion rendered the complaint fatally defective. However, we observe that after the motion for a nonsuit had been made plaintiffs counsel stated that if there was "any particular objection to the form of the pleading" he wished to amend by adding "that at all times mentioned in this cause, plaintiff was the owner and entitled to the possession of the following described property: * * *." The defendants objected to the motion. That motion and the one for a nonsuit were taken under advisement. In the meantime, the defendants proceeded with the presentation of their evidence. At a later stage of the trial the motion for the nonsuit was denied, but nothing was said about the motion to amend.

It is obvious, we believe, that the criticized aver-
ments "on or about" were construed by the parties
as meaning that the plaintiff was the owner of the
goods at the time of the alleged conversion. The words
of the pleading did not say so literally, but neverthe-
less they succeeded in conveying that meaning to
everyone concerned with the trial. Had the defend-
ants been in doubt concerning the meaning of the inapt
language, a motion for particulars would have been
the appropriate means of attacking the pleading. Sec-
tion 1-902, O. C. L. A., says:

> "In the construction of a pleading for the pur-
> pose of determining its effect, its allegations shall
> be liberally construed, with a view of substantial
> justice between the parties."

The rule of liberal construction gains a freer hand
as the cause progresses along its way. An opponent
who gives no voice to his doubts until, as in the present
instance, further particulars can be of no use to him,
encounters the rule of liberal construction in its most
expanded form. In all events, the fundamental test
of every pleading is: Did it afford fair notice to court
and opponent. We are satisfied that the pleading
met that test and, therefore, conclude that this assign-
ment of error is without merit.

We now proceed to the second assignment of
error which contends that "under the facts of this case
it was necessary for the plaintiff to plead a demand in
his complaint and inasmuch as there was no demand
pleaded, defendants' motion for nonsuit should have
been granted." It will be observed that that state-
ment does not claim that the complaint, as phrased,
needed an averment of a demand so as to enable it to
withstand an attack by demurrer, had a demurrer been

filed. The words "under the facts of this case" have reference to (1) the part of the complaint which alleged that "the defendants wrongfully deprived the plaintiff of the aforesaid personal property" and (2) testimony given by the plaintiff which, according to the defendants, indicates that their possession of the property was rightful until after the plaintiff demanded that they permit him to take possession of it. If the original possession was rightful, no conversion could have been based upon the defendants' continued possession until a demand was made by the plaintiff and refused: *Jeffries v. Pankow*, 112 Or. 439, 223 P. 745, 229 P. 903. Notwithstanding that principle of law, it nevertheless remains true that the complaint stated a cause of action. The situation revealed by the above circumstances was a variance, not a defect in the complaint: § 1-1001, O. C. L. A. The latter says:

> "No variance between the allegation in a pleading and the proof shall be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. Whenever it shall be alleged that a party has been so misled, that fact shall be proved to the satisfaction of the court, and in what respect he has been misled; and thereupon the court may order the pleading to be amended upon such terms as shall be just."

The procedure required by that section of our laws was not pursued. No claim was made that the defendants were misled through the failure of the complaint to aver a detention which became wrongful only because a demand for possession had been made. It is our belief that this assignment of error lacks merit.

The third assignment of error states that punitive damages were not recoverable because "the circumstances" of the alleged conversion were not pleaded. The complaint, after alleging that the defendants wrongfully deprived the plaintiff of his property, went on to say that the defendants "wrongully and maliciously converted the above-mentioned property to their own use." Another paragraph alleged: "In doing the things herein alleged, the defendants acted maliciously and were guilty of wanton disregard of the rights and feelings of the plaintiff." Those averments were the basis of still another: that the "exemplary and punitive damages" to which the plaintiff was entitled amounted to $5000.

In presenting this contention, the defendants do not argue that punitive damages were not recoverable under the circumstances developed by the evidence. We observe that in actions of conversion punitive damages have been frequently sustained: see *Garber v. Bradbury,* 106 Or. 490, 209 P. 477; 15 Am. Jur., Damages, p. 710, § 274; and 65 C. J. Trover and Conversion, p. 156, § 282. In this state, our decisions in tort actions have many times embraced the rule which permits a pleader, after identifying the act upon which the adversary's liability is predicated, to aver that it was negligently committed: *Cunningham v. Oregon Farmers Institute,* 168 Or. 452, 124 P. (2d) 304, and *Weinstein v. Wheeler,* 135 Or. 518, 295 P. 196, 296 P. 1079. We believe that rule is equally applicable to a course of conduct that was maliciously performed: *Stark v. Epler,* 59 Or. 262, 117 P. 276; *Sullivan v. Oregon Ry. & N. Co.,* 12 Or. 392, 7 P. 508, 53 Am. Rep. 364; and see Clark on Code Pleading, p. 215, footnote 87, and 25 C. J. S., Damages, § 133 at p. 759. The complaint

goes beyond a description of the defendants' act as malicious, for it says: "The defendants acted maliciously and were guilty of wanton disregard of the rights and feelings of the plaintiff." We believe that this assignment of error is without merit.

The fourth assignment of error is based upon a contention that the evidence does not show that the plaintiff was the owner of the property described in the complaint, with the exception of two items. Those two, the defendants concede, were purchased by the plaintiff independently of the contract which he and Ojala signed. The plaintiff's status was, of course, that of a conditional sales vendee. It is well established that a conditional sales vendee may maintain an action in his own name to recover damages for the conversion of the property. See *Stotts v. Puget Sound Traction L. & P. Co.*, 94 Wash. 339, 162 P. 519, L. R. A. 1917D, 214, and annotation at 217.

The defendants argue that since the contract of sale which Bieg and Ojala signed stipulated that it could not be assigned to another by Ojala without Bieg's written consent, and since Bieg did not express in writing his consent to the contract's assignment to the plaintiff, the latter acquired no title to the property. The defendants cite *Goodrich Silvertown Stores v. Collins*, 167 Or. 40, 115 P. (2d) 332. In that case, as in the present one, a sales contract provided that it could not be assigned to the vendee without the vendor's written consent. The vendee in that case sought to assign the contract to another, but the purported assignment lacked the written consent of the vendor. The vendor in that case, unlike Bieg in the present one, did not recognize the assignee as the owner of the

property. In other words, the vendor in that case waived no provision of the contract.

■■■■ It is axiomatic that a party to a contract may waive performance of any of its provisions if he so chooses. Waiver is nothing else than a voluntary relinquishment of a right. The provision of the Ojala-Bieg contract which protected Bieg against assignment of the contract without his written consent was, of course, a right which he could insist upon or waive as he saw fit. From *Smith v. Martin,* 94 Or. 132, 185 P. 236, we quote:

> "In such contracts as the one we have before us, the provision against assignment without the consent of the seller is made for his benefit and, like all other provisions in favor of a party, he may waive it if he chooses. Such waiver may be proved by parol and by circumstantial evidence, as well as by direct testimony."

See to like effect *Wallace v. Oregon Engineering Co.,* 90 Or. 31, 174 P. 156, 175 P. 445; *Harlow v. Oregonian Publishing Co.,* 53 Or. 272, 100 P. 7; Williston on Contracts, Rev. Ed., § 423; and Restatement of the Law, Contracts, § 162. We believe that the jury was clearly warranted in inferring from the evidence that Bieg acquiesced in the assignment from Ojala to the plaintiff.

■ Moreover, as is evident from the facts previously related, the objection that Bieg did not consent in writing to the assignment of the contract from Ojala to the plaintiff was not made by Bieg but by the defendants who were strangers to the contract. From *Edgar v. Yant,* 66 Colo. 599, 185 P. 252, we quote:

> "Whether the purported contract can be legally assigned is one that can properly be raised only

by the parties to the transaction. Defendants in error, being strangers to Duval, are in no position to question the assignability of the instrument.''

The foregoing, being the only objection which the defendants make to the plaintiff's title to the property described in the complaint, is, in our opinion, without merit.

The last assignment of error, as we have already indicated, states:

"The ramp, boiler-setting, mill and machinery became part of the realty and belonged to the Polk Operating Co., and did not belong to the plaintiff or his predecessors in interest.''

The sawmill which Weaver built was a small affair and stood about 300 feet from a public road. He built it upon a dock-like structure which was constructed of timber. This dock or platform stood four or five feet above the ground. In order to gain access to the road, Weaver built what the witnesses termed a ramp. The part which was nearest the highway lay directly upon the ground and, to use plain English, was a plank road. The part near the mill gradually ascended to the level of the dock. The dock, ramp and mill building were wooden structures. They did not rest upon permanent material such as stone, brick or concrete, nor upon pilings, but upon mud sills. The latter were nothing other than short planks laid upon the ground or sunk into it an inch or two at places where the ground was uneven. Of course, in the construction of the dock, ramp and roadway, Weaver used, not only mud sills, but also other lumber. Seemingly, the dock, ramp and plank road could be readily torn up and removed.

The fire completely consumed the mill, but it left untouched about one-half of the dock (about 60 by 60 feet) and all of the ramp and plank road. Since the machinery of the mill was made of iron, it, of course, was not consumed by the blaze. The plaintiff and some of his witnesses swore that many items of the machinery were not damaged by the fire and remained usable. Two or three of those articles, according to him, were not touched by the blaze. The defendants, however, produced testimony which was to the contrary. The record affords only a meager conception of the manner in which the machinery was fastened in place. It, however, describes the setting for the mill's principal engine. It stood upon some heavy planks which rested directly upon the ground. The planks were not burned and after the fire the engine was removed from the site without difficulty.

The above-quoted assignment of error mentions an object which the witnesses termed a boiler setting. It was hollow, made of concrete and approximately twelve feet long; it was, in fact, the firebox for the boiler. Such being its nature, its interior was lined with firebricks and equipped with iron grates. Standing on top of the boiler setting was the boiler itself. Since the mill which the defendants constructed was operated by electric current, they had no use for the boiler setting and, accordingly, in the construction of their mill rid the place of it. The defendant, Campbell, conceded that he permitted a friend to take the firebricks with which the object was lined. The plaintiff swore that he saw Campbell remove the grates and convert them to the defendants' use. The defendants concede that they placed a heavy cable around the boiler and through the use of mechanical power

pulled it from its base. They threw the boiler near the road, seemingly, in the hope that it would be carried away. They also concede that they destroyed the concrete boiler setting by the use of explosives.

The plaintiff produced evidence which indicated that several items which came through the fire undamaged were incorporated by the defendants in the mill which they constructed upon this same millsite. Some of these objects were lumber, bearings, a water pump, conveyor chains and steam pipe. The defendants concede that the ramp, plank road and section of dock which survived the fire were converted by them into parts of the mill which they built. They also conceded that two truckloads of equipment which had formed a part of the plaintiff's mill were hauled away by one Jack Watkins and were sold by him as junk. The plaintiff claims that the defendants directed Watkins' action.

Depending upon *Blake-McFall Co. v. Wilson*, 98 Or. 626, 193 P. 902, 14 A. L. R. 1275, *Bay City Land Co. v. Craig*, 72 Or. 31, 143 P. 911, and annotations in 39 A. L. R. 1099 and 110 A. L. R. 480, the defendants argue that all of the items mentioned in this assignment of error were, in fact, fixtures and that, in all events, since they were not removed by the plaintiff before the expiration of his term, he forfeited them to his lessor, the Polk Operating Company. We explain that shortly after the fire the lease, under which the plaintiff held, expired through the nonpayment of the annual rental of $10. The plaintiff swore that the defendant, Campbell, deceived him into permitting his lease to expire through falsely representing to him that if he would permit it to expire he, Campbell, would unite with the plaintiff in the formation of a new corporation

which would secure a lease from the Polk Operating Company and reconstruct the mill.

In the decisions upon which the defendants rely, it was the lessor who asserted that the items claimed by the plaintiff were fixtures. As we pointed out in a previous paragraph, the Polk Operating Company has made no claim to any of the property mentioned in this assignment of error. The aforementioned Withrow, on behalf of his principal, the Polk Operating Company, expressly disavowed any interest in the property under review, and said that his principal claimed nothing but the bare land. In a preceding paragraph we also quoted one of the provisions of the lease under which the plaintiff held, and which said:

"The lessee agrees upon the termination of this lease to remove his property promptly and return said premises at the expiration of this lease in as good condition as they are now in, fire and other unavoidable casualties excepted."

That provision formed a part also of the Weaver and Bieg leases and, obviously, was the basis of Withrow's statement that his principal claimed nothing but the bare land.

Although the plaintiff swore that the defendants prevented him from removing the property which remained after the fire, Campbell testified to the contrary. He expressly disclaimed, on behalf of his co-defendant, Coastal Lumber Company, as well as himself, any interest in the property which was left upon the site after the fire. According to him, he was anxious for the plaintiff to remove everything so that the site would be free from litter and not impede his construction work. In fact, he swore that he stacked

in a great pile everything which survived the fire, in the hope that the plaintiff would come and get it. He went further and testified that the plaintiff's failure to remove his belongings required him, Campbell, to incur the expense of moving the pile a couple of times. In other words, he treated the machinery, at least, which survived the fire as personal property, not as fixtures. Although Campbell's testimony included everything which survived the fire, possibly he did not have in mind the plank road, ramp and portion of the dock which were not consumed by the fire. We shall, therefore, except those three items from his sweeping testimony.

It is clear that Bieg, Ojala and the plaintiff deemed the mill and the machinery as personal property, for each paid a substantial price for them.

In *Wheeler v. McFerron*, 33 Or. 22, 52 P. 993, we recognized that a structure as important as a warehouse "may be personal property, for which an action of replevin will lie." See to like effect 22 Am. Jur., Fixtures, §§ 64 and 65. The reason for the decision just cited was the fact that the parties had not intended the building to become part of the land. Today, the intention of the parties is of pre-eminent importance: *Blake-McFall Co. v. Wilson*, 98 Or. 626, 193 P. 902, 14 A. L. R. 1275. As we have seen, the lessor deemed nothing but the bare ground as its property and, accordingly, the Coastal Lumber Company, as tenant, did not acquire ownership of the ramp, dock and plank road.

■ In view of the fact that the lessor claimed ownership of none of the items mentioned in this assignment of error, but, to the contrary, expressly

disclaimed ownership, we have no hesitancy in finding that they never lost their status as personal property. The lessor was entirely willing for the plaintiff to come upon the land at any time and remove his property. The defendant, Campbell, contrary to the position which he assumed when the dispute was in its inception, swore that he was always ready for the plaintiff to come upon the land and remove his property. In view of that testimony, there is no occasion for determining the rights of a tenant who seeks, against the wishes of his lessor, to remove his belongings from the premises after the close of the term.

The law of property has no policy concerning fixtures independent of the wishes of the parties. Normally, no item of personal property is forced upon a lessor as a fixture contrary to the desires of everyone who is concerned with the property. Since the lessor expressly disclaimed ownership of any article mentioned in the complaint, none of them lost its identity as personal property. We are satisfied that this assignment of error is without merit.

Although we gave careful attention to all of the contentions made by the appellants and examined all of the authorities which their briefs cite, we are satisfied that the judgment under attack is free from error and must be affirmed.