Argued May 1, affirmed September 6, 1961

# MILLER *v.* LILLARD

364 P. 2d 766

*S. J. Bischoff,* Portland, argued the cause for appellant. With him on the briefs was Pat H. Donegan, Burns.

*William D. Cramer,* Burns, argued the cause for respondent. On the brief were Cramer & Gronso, Burns.

Before McALLISTER, Chief Justice, and ROSSMAN,

WARNER, PERRY, SLOAN, O'CONNELL and GOODWIN, Justices.

## WARNER, J.

This is an action to recover general and punitive damages for the alleged conversion of three cows and two calves, property of the plaintiff, Miller, by the defendant, Lillard. The jury returned a verdict in favor of plaintiff. From the judgment rendered, the defendant appeals, specifying six assignments of error.

The parties are cattlemen, operating ranches in and around Harney county for many years past. Their ranches join each other, separated by what is known as Robbins Lane. Each ran approximately 500 head of cattle, generally known as "white face."

Defendant's first assignment asserts the court erred in denying his motion for nonsuit.

By his motion defendant confined himself to two grounds: (1) failure of complaint to allege and prove that he made a demand for the return of the cows before filing his action; and (2) failure to allege that he was the owner of the cows and entitled to their possession at the time of the conversion.

It is well settled that the motion of an adverse party for a nonsuit must specify the grounds therefor and when such a motion is denied the grounds stated therein are conclusive on the moving party and he may not urge additional grounds for the first time on appeal. *Carlson v. Steiner,* 189 Or 255, 261, 220 P2d 100; *Ingalls v. Isensee,* 170 Or 393, 398, 133 P2d 614; *Mollencop v. City of Salem,* 139 Or 137, 142, 8 P2d 783, 83 ALR 315.

We, therefore, limit our attention to the two grounds above mentioned, although Lillard supple-

ments this assignment with other matters not included in his motion.

█ A demand for return is only necessary when the complaint has been grounded on a lawful taking, followed by an unlawful detention. Here, the complaint is based on an unlawful taking. This difference resolves the question whether a demand must precede action.

The complaint alleges that Lillard, at the time alleged, "wilfully and unlawfully converted said cows to his own use  *  *  *, concealing the markings and identity of various of said cows by cutting off wattles, tearing out ear tag, putting on his own brand  *  *  *." It was not necessary to plead demand under the circumstances as a condition precedent to Miller's right of action. *Jeffries v. Pankow,* 112 Or 439, 445-446, 223 P 745, 229 P 903; *Montgomery v. U. S. National Bank,* 220 Or 553, 568, 349 P2d 464; *Cross v. Campbell,* 173 Or 477, 489, 146 P2d 83; *Genova v. Johnson,* 213 Or 47, 55, 321 P2d 1050; 89 CJS 557, Trover & Conversion § 55.

The second ground advanced in support of the motion for nonsuit was the failure of plaintiff to allege ownership and right to possession of the cattle at the time of the alleged conversion.

In the first two paragraphs of his complaint plaintiff alleges he was the owner and entitled to the immediate possession of the cattle on September 26, 1959.

In paragraph III he avers "That at some date, or dates, *prior* to September 26, 1959, which date, or dates are unknown to the Plaintiff," the defendant converted said cows to his own use. (Emphasis supplied.)

In *Hunt v. First National Bank of Halfway,* 102

Or 398, 202 P 564, cited to us by Lillard as controlling, the defendant bank successfully demurred to a complaint in conversion, wherein plaintiff alleged he was the owner of certain bonds on November 19, 1919, on which date Hunt delivered the same to the bank and the bank on December 16, 1920, converted the bonds to its own use. The essence of the ruling in Hunt is encompassed in the statement: "It is not enough that the plaintiff at some time owned the property. To support his action he must allege some kind of property in himself at the time the act of conversion was performed." (102 Or at 399)

In *Hunt* the plaintiff elected to stand on his complaint and declined to plead further. In this case defendant Lillard did not demur, but answered by a general denial, nor did Lillard choose to object to the introduction of plaintiff's considerable evidence offered in proof of his ownership of the cows in question for an interrupted period of time extending back as far as seven years prior to September, 1959. The defendant raised no question to the defect in the complaint until after the completion of plaintiff's case, which had already taken two days for presentation of the testimony of plaintiff's 12 witnesses and introduction of numerous exhibits. Then he challenged the complaint for the first time by his motion for nonsuit.

*Cross v. Campbell,* supra (173 Or 477), was an action in conversion. The defendant Campbell answered with a general denial. The defect respecting the allegations of Cross's ownership of the controverted property was raised in that case for the first time when Campbell, as does the defendant Lillard here, moved for nonsuit at the conclusion of plaintiff's case.

In *Cross,* supra, we said at p 487:

"It is equally evident that in the case now before us the failure of the complaint to allege that at the moment of the conversion the plaintiff was owner, did not mislead the defendants and did not inconvenience the trial. The absence of the required precision was not mentioned during the course of the plaintiff's presentation of his evidence. And, as we have already indicated, the sufficiency of the complaint was challenged by neither motion nor demurrer. The defect, which the defendants now insist upon, was not mentioned until the close of the plaintiff's evidence when the defendants moved for a nonsuit * * *."

And further at p 489:

"* * * The rule of liberal construction gains a freer hand as the cause progresses along its way. An opponent who gives no voice to his doubts until, as in the present instance, further particulars can be of no use to him, encounters the rule of liberal construction in its most expanded form. * * *"

■ Although not artfully expressed, we are of the opinion the statement in paragraph III of the complaint: "That at some date, or dates, prior to September 26, 1959, * * * defendant converted said cows * * *," is a defective statement in a good cause of action, which, read with plaintiff's earlier allegation of ownership on that date, renders the pleading susceptible to the construction that plaintiff was the owner of the cows on the dates of their conversion. The capacity of a complaint to give notice of the line of attack is said to be the principal requirement that it must now possess. *Donis v. Sawyer Service, Inc.,* 143 Or 433, 435, 21 P2d 776, citing Clark, Code Pleading, p 74. During the course of the trial defendant at no time claimed surprise and apparently had no dif-

ficulty in understanding the nature of the claim upon which the plaintiff relied. *Donis,* supra.

Under the conditions presented by the record, the same rule of liberality applied in *Cross* is applicable here, especially when our review of the evidence presented by plaintiff indicates a *prima facie* case.

We find no merit in the appellant's first assignment.

For appellant's second assignment, he claims that the trial court erred in instructing the jury on the issue of punitive damages. The defendant took exception to this instruction, as well as others, in the following manner:

> "The defendant takes exception to all of Plaintiff's Requested instructions which were offered and given. * * *."

It will be noticed that the exception makes no mention of the error alleged in the instruction.

■ The general rule is that exceptions to the charge of the court must point out specifically and definitely indicate the alleged defects in an offending instruction. The trial court and opposing counsel are entitled to know the grounds upon which an attack is made upon an instruction so that the court may make its ruling understandingly and be given an opportunity to correct any error. ORS 17.510; *LaBarge v. United Insurance Co.,* 221 Or 480, 488, 349 P2d 822; *Galer v. Weyerhaeuser Timber Co.,* 218 Or 152, 175, 344 P2d 544, and cases there cited; *Cook v. Retzlaff,* 163 Or 683, 686, 99 P2d 22.

■ Because of the insufficiency of the exception taken in the trial court, we give no further heed to this assignment.

Under defendant's third assignment, he argues that it was error for the court on examination of the witness Francis Miller to overrule defendant's objection to the reception in evidence of plaintiff's Exhibit 6, a certificate of registration of plaintiff's cattle brand, issued pursuant to ORS 604.140. The specific objection to the introduction of this document was made by the defendant in the following terms:

"Defendant objects to the offer for the reason that it is not a duly certified copy of what purports to be the records of the Oregon State Department of Agriculture. It fails to contain any certification of comparison, that it is a true copy, or any of the statutory necessities to allow the offer to be entered in evidence. It is no more than a photo copy of a deed from the County Clerk which is uncertified."

The objection clearly rests upon the sole ground that the tendered exhibit was faulty because of the lack of proper certification and identification and, therefore, not entitled to be received as evidence.

The defendant by his objection mistakes Exhibit 6 for a record of the recording of plaintiff's application to adopt a particular brand, as provided by ORS 604.150. But Exhibit 6 was not of that character. It is, as is apparent on its face, a "Certificate of Registration" such as is issued to a brand owner by the state when his application is recorded. See ORS 604.140(2).

However, ORS 604.180(2) relating to the use of brand certificates in evidence states categorically:

"Proof of the right of any person to use such brand shall be made by a copy of the record, certified to by the department in accordance with ORS 604.150, *or the original certificate issued to him*

*by the department or by the former state veterinarian.* * * *"* (Emphasis supplied.)

■ The court admitted the document under the authority of the emphasized portion of the statute. Plaintiff testified that this Certificate of Registration was obtained from the Department of Agriculture and was the only certificate issued to him. This is clearly within the scope of the statute and the ruling of the trial judge was correct.

■ It is well settled that when an objection upon one ground does not include others, it is a waiver of all objections not specified, and additional or further grounds subsequently tendered on appeal, as the appellant does through the avenue of his brief, will not be considered. *Hildebrand v. United Artisans,* 50 Or 159, 166, 91 P 542; *State v. Merlo,* 92 Or 678, 686, 173 P 317, 182 P 153; *Hamilton v. Kelsey,* 126 Or 26, 40, 41, 268 P 750.

The fourth assignment is actually a claim of two errors embraced in one statement. For purposes of clarification, the assignment is set forth as presented by the appellant:

"The Court, on cross-examination of witness Gene Kunkle, erred in [1] failing to sustain Defendant's objection to testimony concerning the making and filing of the report of his investigation, failing to make same available to Plaintiff's Counsel * * * and [2] in refusing to admit the report, Exhibit A, for identification into evidence after the Court permitted the said evidence to be introduced." (We have interpolated the two numbers for the purpose of later reference.)

Referring to the first part of said allegations, i.e., the objection to the following question addressed to Mr. Kunkle by plaintiff on cross-examination: "Did

you offer to make any such report available to plaintiff or myself?" we need only look to the form of the objection as framed by defendant's counsel. It had the maximum attributes of simplicity but was without the minimum requirements of the law in order to command attention. It reads: "I object to the question, your Honor."

■ This objection as it stands is a general one and conveys no indication of the ground upon which it rests. The prevailing rule is that an objection general in terms, if overruled, cannot avail the objector on appeal. *State v. Hoover,* 219 Or 288, 314, 347 P2d 69, and cases there cited; 1 Wigmore, Evidence (3d ed 1940), 332 § 18.

■ The second part of the fourth assignment relates to the refusal of the court to admit into evidence "Exhibit A, for identification."

"Exhibit A, for identification" offered in evidence was a document prepared by Gene Kunkle, a witness called by the defendant. Kunkle was a livestock officer for the State Department of Agriculture and in charge of brand inspection for that agency. The writing referred to was in the nature of a copy of a report he had made to his superiors. His own testimony leaves doubt as to whether it is even a full and true copy. It is replete with hearsay observations concerning the Miller and Lillard cattle and the opinions of others relative to the brands on such cattle, as well as other matters concerning things neither material nor relevant to the alleged acts of conversion, a matter about which Kunkle had no personal knowledge. After our own examination of the so-called Exhibit A, we find ourselves in accord with the conclusions of the trial judge: copy or original, it was clearly inadmissible.

We are convinced that an investigative report of

this type by the livestock officer is not even admissible under the "Uniform Business Records as Evidence Act" (ORS 41.680-41.710). In 1947, under the predecessor of the present act (Oregon Laws 1941, ch 414), the court said in refusing admittance of the report of a police officer:

"* * * We think the statute has no application. The police officer did not see the collision occur, and his report, in the main, is based upon what various individuals—including interested parties—told him about it. Such evidence is pure hearsay. * * * The precise question was before the New York court in *Johnson v. Lutz*, 170 N. E. 517, and it was held under a similar statute that such reports were inadmissible. * * *" *Snyder v. Portland Traction Co.*, 182 Or 344, 351, 185 P2d 563. See, also, *Christ v. McDonald*, 152 Or 494, 499, 52 P2d 655; and *State v. King*, 165 Or 26, 37, 103 P2d 751.

Here, as we have noticed, Kunkle did not observe the conversion in issue. He merely reported his findings after the conversion. All testimony relevant to his investigation was otherwise introduced into the record orally by Kunkle, relying on his best memory.

We find no merit in the fourth assignment.

When we turn to consider defendant's fifth assignment we find it relates to three alleged errors, all, however, springing from the same subject matter. Under this assignment he asserts the court erred in allowing plaintiff's counsel to cross-examine the witness Kunkle "as to controversies over cattle belonging to Mr. Acton and Mr. Deardorf"; and it further erred in denying defendant's motion for a mistrial based thereon and his motion to strike the evidence given.

That part of the cross-examination of Kunkle by

plaintiff's counsel which gave rise to the objection and the motions of defendant is as follows:

"Q  So, if there was any importance to this case in that particular incident, it had to do with the investigation of other animals, did it not?

"A  Yes, sir.

"Q  Isn't it a fact that your investigation did point toward a number of other things than just these two cows?

"MR. DONEGAN: I object to that, your Honor.

"THE COURT: The objection will be denied.

"A  Were other cattle involved, is that the question?

"Q  Yes.

"A  Yes, sir.

"Q  Isn't it a fact, Mr. Kunkle, that one of these other cows, that you had a good deal more to go on in the way of a larceny investigation at that time, than you did these two cows, didn't you?

"A  I had more than that, yes, sir.

"Q  And among other things you had a cow that was held there at the Francis Miller ranch with a plain Bar I L on one hip, the right hip, and a plain V dash on the other hip?

"A  Yes, sir."

We pause to observe that the foregoing questions and answers make no reference to Acton or Deardorf as the owners of any of the cows which were the object of Mr. Kunkle's inquiries.

At that juncture the parties retired with the judge to his chambers, where defendant's counsel renewed his objection with his reasons therefor. It was then that he also moved for a mistrial and made his motion to strike the testimony of Kunkle. The objection was denied and the motions overruled.

Defendant's counsel rests his argument primarily

upon the use of the words "larceny investigation," as employed by plaintiff's counsel in the foregoing quotation from the transcript. He claims that they were highly inflammatory and to emphasize his point he employs in his brief the use of heavy type on the words "larceny" and "larceny investigation."

Preliminary to what follows, it appears in order to here take note of Mr. Kunkle's connection with the case. His presence in the area of the parties was in his official capacity as a state livestock and brand inspector. It is a fair inference that suspicions and rumors of cattle theft in the Harney county area pointed in the direction of defendant Lillard. Kunkle had been called from Salem to that locality by the local state brand inspector for the purpose of investigating the same. State and county officers coöperated with Mr. Kunkle in his ensuing investigation. Among other activities, they established a watch on the Lillard place and made a close inspection of his herd. They also made an examination of fresh excavations on the Lillard ranch to determine whether any cattle had been recently buried. As a part of Kunkle's inquiry he examined brands on cattle in the corrals of plaintiff at Miller's place, which was just across the road from the Lillard ranch. The Kunkle investigation took several days and included interviews with many persons, cattlemen and others, strangers to this action. He made a report of his activities in a memorandum which he sent to his superiors in Salem. It is the report referred to as "Exhibit A" and considered above in our discussion relative to defendant's fourth assignment of error. The investigation and activities of Kunkle necessarily included inquiries equally applicable to Miller's cows, as well as the claims of other cattlemen in the community. When he had finished,

Kunkle laid his data before the district attorney, who advised him there was no evidence to support a larceny charge, and in fairness to Lillard, we note that no complaint of that kind was ever made.

The "particular incident" of which counsel speaks in his cross-examination relates to a report Kunkle had received from the plaintiff and a Mr. Temple that "someone had observed a rider moving some cows west toward the range, away from Joe's [Lillard's] corrals." It was this information that caused Kunkle and the local law officers assisting him to establish the night watch on the road leading from Lillard's ranch, to which we have referred above.

The testimony of Mr. Kunkle includes 25 pages of the transcript and was devoted entirely to the subject of his investigation of the matters which brought him to Harney county.

Defendant's counsel opened the subject of Kunkle's investigations with this question: "Were you called into Harney County the latter part of last August to investigate an alleged *livestock larceny case?*" The witness replied in the affirmative. In later questions counsel asked him if he was there at the request of Miller "to confirm evidence that *Mr. Lillard had stolen* these two cattle" and as to "having obtained any kind of *evidence of larceny.*" In another question relating to Kunkle's investigation, defendant's counsel asked about the burying of "stolen cattle." Kunkle, in reply to plaintiff's question as to why he remained out all one night near the Lillard place, answered: "In case there were some *stolen cattle* to be moved away from Joe's [Lillard's] ranch." And later stated "On the *larceny aspect,* I believe I told him [Miller] that we had contacted * * * the District Attorney, and we had no basis for a *larceny case.*" (Emphasis supplied.)

■ Under the circumstances, we fail to see how defendant can claim that he was prejudiced by plaintiff's question to Kunkle in which he referred to the witness's activities as a "larceny investigation," and particularly when the question made no reference to Lillard or to any persons who may have accused Lillard of cattle theft. If any prejudice was engendered, it had its origin in questions propounded by defendant's counsel and the replies which he elicited from defendant's witness Kunkle.

The general rule as to the scope of cross-examination is found in ORS 45.570:

> "The adverse party may cross-examine the witness as to any matter stated in his direct examination, or connected therewith, and in so doing may put leading questions;   *   *   *."

The foregoing rule had our attention in *Ah Doon v. Smith*, 25 Or 89, 34 P 1093, a classic opinion on the subject, written by Mr. Justice ROBERT S. BEAN. Speaking for the court, he said at pp 93-94:

> "*   *   *   Under this statute [Section 873, Hill's Code, now ORS 45.570], and the rule there provided, a party has no right to cross-examine a witness except as to facts and circumstances stated on his direct examination or connected therewith, but within this limitation great latitude should be allowed in conducting the examination. It should not be limited to the exact facts stated on the direct examination, but may extend to other matters which tend to limit, explain, or qualify them, or to rebut or modify any inference resulting therefrom, provided they are directly connected with the matter stated in the direct examination. It is true the party against whom a witness is called cannot, on cross-examination, go into an independent or affirmative case on his part, but must confine his examination to such facts connected with the direct

examination as go to counteract so much of the case of his adversary as the direct examination tends to prove, but the fact that evidence called forth by a legitimate cross-examination also tends to sustain some defense affords no reason why it should be excluded. A party will not be permitted to glean out certain facts from his witness, which, without explanation, would give a false coloring to the matter about which he testifies, and then save his witness from the sifting process of a cross-examination by which the real transaction could be shown."

See, also, *Ritchie v. Pittman,* 144 Or 228, 231, 24 P2d 328, and cases there cited.

The trial court did not err as claimed by the defendant under his fifth assignment.

We have given attention to this defendant's sixth and last assignment and find it without merit.

The judgment is affirmed.