Argued December 6, 1966, affirmed March 15, 1967

STATE OF OREGON, *Respondent, v.* BERRY
COLE LATTA, *Appellant.*

425 P. 2d 186

*Oscar D. Howlett,* Portland, argued the cause and filed briefs for appellant.

*Michael D. Montgomery,* Deputy District Attorney, Oregon City, argued the cause for respondent. On the brief was Roger Rook, District Attorney, Oregon City.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN,[*] Justices.

O'CONNELL, J.

Defendant appeals from a judgment of conviction for the crime of burglary not in a dwelling. The facts are as follows:

On the evening of November 28, 1964, the defendant and two other men were apprehended together at Southwest Bell and Johnson Creek Boulevard, which is in northern Clackamas county not far from the Portland city limits. The three of them, while being observed by the officer, drove up to a telephone booth. All three got out and went to the rear of the car. One of them then got back into the car and the other

---

[*] Holman, J., did not participate in the decision of this case.

two, including defendant, walked toward the phone booth. Defendant remained outside the booth and his companion entered. Defendant handed something to the man in the booth and the man in the booth commenced fitting something to the bottom of the telephone. Upon the discovery of the officer the man inside the booth handed something to defendant, who threw it towards the car. A search of the car and the adjacent area disclosed mechanical parts which when assembled composed a mechanism capable of opening the coin boxes on telephones. Most of the parts were found within the car, some on the front seat and some on the back seat in paper bags. One part was found on the ground adjacent the front door. There was also found on the back seat a bag of nickels, dimes and quarters totalling $234.60.

On November 29, 1964, the next day, a telephone box in the city of Willamette was found to have been broken into and the box cover was missing. The record does not show how far Willamette is from the first burglary but Clackamas county citizens would know that it was about seven or eight miles. The records of the telephone company indicate that November 2, 1964, was the last time the Willamette telephone booth was checked by the company.

The principal assignment of error is directed at the admission into evidence of the box cover removed from the Willamette phone booth. The exhibit was received after the director of the Oregon State Crime Detection Laboratory testified that the markings on the box cover had been made by the chucks of the tool which was found in the automobile and on the ground near the scene of the alleged burglary. The exhibit was admitted solely for the purpose of showing the use which could be made of the tool. The trial court

gave the following explanation in admitting the exhibit:

"THE COURT: I would now advise the jury and the record should disclose that the Court has set aside its previous ruling with respect to the admissibility of State's Exhibit 15 for identification, which is the green colored coin box door, and that the same is now received in evidence for the limited and sole purpose only of permitting evidence to be received of what use, if any, could be made of State's Exhibits 1 and 2 [the chucks] and for no other purpose, and the evidence and the testimony of Manuel Boyes with respect to State's Exhibits 1 and 2 and State's Exhibit 15 is permitted to stand for such limited purpose only and for no other purpose."

It is contended that the admission of this evidence violates the rule forbidding the prosecution from introducing evidence of other crimes to show the defendant's bad character.

■ Evidence of other crimes is admissible against the defendant if it "is substantially relevant for some other purpose than to show a probability that he committed the crime on trial because he is a man of criminal character." McCormick, Evidence 327 (1954).

It is possible that the jury could infer that because the tool used to open the Willamette phone box was later found in defendant's possession defendant committed the Willamette burglary and because he did so he is a bad man and therefore committed the burglary for which he is now on trial. But conceding that the jury could draw such an inference from the evidence, it is nevertheless admissible if, as McCormick points out, it is "substantially relevant" for some other purpose. We are of the opinion that the evidence in this case has this other relevancy.

The state wished to prove that the tool found in defendant's possession⊙ was capable of being used for the purpose of opening a phone box. This could have been an important part of the state's case if, as in the companion case of *State v. Meidel,* 83 Or Adv Sh 567, 420 P2d 386 (1966), it was asserted that the defendant thought the tool was an automobile valve lifter.

■ The state had elicited testimony from one witness who explained that the tool could be used to open a phone box. The state wished to go beyond this showing of a possible use to prove that the tool in question was actually used to open a box. It was of course possible to show this much through the use of a box cover not involved in another burglary. However, the state wanted to show not only that the tool could be used to open a phone box but also that it was designed to be used as a burglary tool and was in defendant's possession for the purpose of burglarizing the phone booth in question. No better evidence could be adduced for this purpose than to show that the tool had actually been used in another burglary. The possible prejudice created by the fact that the jury might think that defendant was the burglar on the previous occasion is not enough in our opinion to preclude the use of the evidence for the purpose for which it was employed in this case, particularly in view of the trial court's explanation to the jury that the evidence was received only for the limited purpose of showing the use which could be made of the tool.

■■ It is further argued that the box cover should have been excluded because the state did not show who had possession of it from the time it was removed from the Willamette phone booth until introduced into

---

⊙ The jury could reasonably believe that the tool was in defendant's possession at the time of the burglary on trial.

evidence. Although defendant objected to the introduction of the evidence on various grounds, he at no time objected to it on the ground that it was in any different condition than it was at the time it was removed from the booth.[2]

The other assignments of error are also without merit.

Judgment affirmed.

SLOAN, J., dissenting.

This is one of the most difficult cases involving the admissibility of evidence of another crime that the court has encountered in some time. It is not necessary to consider the reasons why evidence which may establish that a defendant has committed a crime not charged in the indictment may be admitted. Whether we apply the rule of relevance, *State v. Kristich,* 1960, 226 Or 240, 359 P2d 1106, or one stated in terms of a rule of exclusion, with exceptions, *State v. O'Donnell,* 1900, 36 Or 222, 61 P 892, the questioned exhibit, would have been admissible, if, and that is a big if, there were not so many credibility gaps in the evidence relative to the exhibit. The majority avoid the problem by ignoring the gaps and by making assumptions on non-existent evidence. To explain, it is necessary to summarize more of the evidence.

The exhibit in question, designated in the record as exhibit 15, was described as the door to the coin box on the phone in the Willamette phone booth. The door is an integral part of the pay telephone. It is about 4″ x 4″ in size, made of heavy metal and secured

[2] An objection must be stated with sufficient specificity to give the trial court and opposing counsel an opportunity to remedy defects in the evidence. See, e.g., Miller v. Lillard, 228 Or 202, 364 P2d 766 (1961); Fidelity Sec. Corp. v. Brugman, 137 Or 38, 1 P2d 131, 75 ALR 1333 (1931).

to the lower part of the telephone by hinges and a strong lock. The lock is, of course, built to be opened with a key. The door is adjacent to the coin return slot commonly found on most pay telephones. This door is the exhibit to be referred to in this opinion.

The tool, which it was alleged defendant and others had caused to be made, consisted of several component parts. It was designed for the parts to fit together on a pay telephone. When properly assembled on the telephone it appears that it would readily open and remove the coin box door. One part of the tool was referred to as a point or chuck. When the parts of the tool were assembled for use the chuck would fit into the keyhole on the door. The marks that the expert testified had been made on the exhibit in question were said to be marks made in the keyhole on the exhibit by the chuck that was found when defendant was arrested.

The other evidence relative to the exhibit (the door from the Willamette phone) was that on November 2, 1964, it was in place on the pay telephone in the Willamette phone booth. On November 29, it was found missing. It apparently had not been removed by an employe of the telephone company. Sometime between November 29 and the date of trial, which began on May 11, 1965, the exhibit was in the hands of the expert who found the marks made by the "chuck" that has been described. The exhibit was present in the courtroom. Otherwise, there was no evidence as to when, how or by whom the exhibit was removed from the Willamette phone booth, or where it may have been found and in whose custody it had been kept. It was not even explained as to how it got in the courtroom. Furthermore, no one said whether or not the marks were on an exhibit whenever it first came into the possession of the police. The opportunities for tam-

pering with the exhibit were unlimited, but no one bothered to say that the exhibit had been safeguarded at any time. As before mentioned the tool had to be assembled in order to be used. It does not appear whether or not the marks could have been made on the exhibit by that part of the tool called the chuck without the use of the complete tool. For all that appears the marks could have been made by an officer or anyone else when experimenting with the use of parts of the tool. This was not excluded as a probability by the testimony of any witness. The only connection between defendant and the marks on the exhibit was that the marks had been made by some one at some time by one of the several parts of the tool that were found when defendant was arrested.

It is also necessary to mention that the use of the tool was explained in the courtroom. A complete, intact pay telephone was introduced into evidence. A witness assembled parts of the tool on that telephone and demonstrated to the jury how the assembled tool would remove the coin box door from that pay telephone. We cannot tell exactly how this was done. From the oral testimony of the witness who demonstrated the tool to the jury it would appear that in order to demonstrate how the tool could be used it was necessary to apply the tool to a complete pay telephone. The challenged exhibit itself, that is the coin box door separate and apart from the telephone, would not be sufficient to disclose how the tool could be used. No witness claimed or even suggested or demonstrated that the exhibit could be used for that purpose.

During the course of the trial the exhibit was repeatedly offered in evidence, and repeatedly refused. After each offer the state would attempt to present some other evidence to establish the admissibility and

after each effort cross-examination would disclose that the witness knew nothing about it. Nevertheless the state persisted in offering it until at last the court made the ruling quoted by the majority.

The ruling was patently wrong. The exhibit by itself could not in any way demonstrate the use of the tool beyond showing that the chucks could have made the marks upon it. The actual purpose and use of the tool had already been demonstrated to the jury. It was unnecessary and unwarranted to admit the exhibit for the purpose stated.

It is apparent that the persistent pressure of the state to bring this exhibit before the jury was to brand defendant as a criminal. The exhibit had no other relevance. It is also apparent that the jurors would have become more enchanted with the game of getting the exhibit into evidence than with any evidence relevant to the crime they were trying. The record demonstrates the hazard of trying a defendant for a crime not charged in the indictment. It was highly prejudicial.

There are three valid reasons why this exhibit was not admissible for any reason. One, was the failure to prove its custody and the consequent lack of evidence excluding the probability that the vital marks on the exhibit could have been made by anyone. On this score the record is simply silent. It is said, however, that this was not called to the trial court's attention. This is not right. In at least one objection to the exhibit counsel stated to the court, as a reason for objecting, that there was no evidence of "where it came from." On at least one occasion when the court refused to admit the exhibit the court commented to the state's attorney that he had failed to show where

the exhibit had been and how it got into the court-room. The court was conscious of this objection to the exhibit.

The second reason is that "* * * it is essential to the admissibility of evidence of another distinct offense that proof of the latter offense be plain, clear and conclusive. Evidence of a vague and uncertain character regarding such an alleged offense is never admissible." *Paris v. United States,* (CCA 8th, 1919) 260 F 529, 531; *People v. Albertson,* 1944, 23 Cal2d 550, 145 P2d 7; Morgan and Maquire, Cases and Materials on Evidence, 1951, p 178; *State v. Reynolds,* 1965, 28 Wis2d 350, 137 NW2d 14, a case strikingly similar to the instant one, and *State v. Wilson,* 1960, 221 Or 602, 607, 351 P2d 944. In a recent Nevada decision the court said:

> "We have not before had occasion to discuss the quantum of proof needed to establish that the defendant on trial committed the separate offense sought to be introduced. Here there was only conjecture and suspicion, aroused by the fact that Kaylor was found dead in Tucker's home. We now adopt the rule that, before evidence of a collateral offense is admissible for any purpose, the prosecution must first establish by plain, clear and convincing evidence, that the defendant committed that offense." *Tucker v. State,* 1966, 412 P2d 970, 972.

The third reason for refusing the exhibit is its lack of any material relevance. The majority say it was necessary to prove the use of the tool. This is not supported by the evidence. As I endeavored to explain before, that purpose had been explained and demonstrated to the jury. The exhibit was not used in any way or by any witness to demonstrate the use of the tool. It appears that it could not have been.

It was unnecessary to bring in this prejudicial, dubiously established exhibit for any relevant purpose. The exhibit did not offer any assistance in the effort to prove the truth of the crime charged. Lacy, Admissibility of Evidence, 1952, 31 Or L Rev 267. The exhibit was merely dangled before the jury to establish that defendant was a criminal. That was wrong.

The judgment should be reversed.

McALLISTER, J., joins in this dissent.