Argued April 23, affirmed October 8, 1973

SCHOOL DISTRICT No. 48, WASHINGTON
COUNTY ET AL, *Petitioners, v.* FAIR DISMISSAL
APPEALS BOARD ET AL (No. 2042), *Respondents.*
514 P2d 1114

*Mark C. McClanahan*, Portland, argued the cause for petitioners. With him on the brief were Miller,

Anderson, Nash, Yerke & Wiener, and Martin B. Vidgoff, Portland.

No appearance for respondent Fair Dismissal Appeals Board.

*Nicholas D. Zafiratos,* Astoria, argued the cause and filed the brief for respondent Peter Paul.

Before SCHWAB, Chief Judge, and FOLEY and FORT, Judges.

FORT, J.

■ Respondent Paul was employed as a permanent high school teacher (ORS 342.815 (5))[1] by School District No. 48, petitioner herein. Pursuant to ORS 342.895, School District No. 48 dismissed Mr. Paul, charging inadequate performance. ORS 342.865 (1) (g).[2] Mr. Paul appealed to the Fair Dismissal Appeals Board (FDAB) pursuant to ORS 342.905. After hearing, that board set aside petitioners' order discharging Mr. Paul on the ground that Mr. Paul's "performance has not been shown to be inadequate as charged" and ordered the school board to reinstate him. From that order petitioners herein have sought judicial review pursuant to the Administrative Pro-

---

[1] ORS 342.815 (5) states as follows:

" 'Permanent teacher' means any teacher who has been regularly employed by a fair dismissal district for a period of not less than three successive years, whether or not the district was such a district during all of such period and who has been reelected by such district after the completion of such three-year period for the next succeeding school year."

[2] ORS 342.865 (1)(g):

"(1) No permanent teacher shall be dismissed except for:
"* * * * *
"(g) Inadequate performance;
"* * * * *."

cedures Act (ORS 183.310-183.500), asserting error by the FDAB in a number of particulars.[9]

## SCOPE OF REVIEW

■ *In this court.* It is not disputed that the FDAB is an administrative agency within ORS 183.310 (1),[10] and that this matter is a "contested case" as defined in ORS 183.310 (2). The scope of our review is governed generally by ORS 183.480 (1)(b) and (7). ORS 183.480 (7) provides that an order of the agency shall be reversed or remanded only if:

"* * * * *

"(d) On review of a contested case, the order is not supported by reliable, probative and substantial evidence in the whole record; * * *

"* * * * *."

Thus, review in this court is limited accordingly. *Ward v. Ore. State Board of Nursing,* 266 Or 128, 510 P2d 554 (1973); *Bay v. State Board of Education,* 233 Or 601, 378 P2d 558, 96 ALR2d 529 (1963); *Board of Medical Examiners v. Mintz,* 233 Or 441, 378 P2d 945 (1963).

■ *Before the Fair Dismissal Appeals Board.* Petitioners concede that the FDAB reviewed the dismissal of Mr. Paul de novo, and that before that board, all parties "proceeded with the concession that

---

[9] In School Dist. No. 48 v. Fair Dis. App. Bd., 14 Or App 35, 512 P2d 799 (1973), involving the same parties as in the case at bar, we held that review of orders of the FDAB was governed by the Administrative Procedures Act. That holding is the law of this case.

[10] ORS 183.310 (1):

"'Agency' means any state board, commission, department, or division thereof, or officer authorized by law to make rules or to issue orders, except those in the legislative and judicial branches."

the Appeals Board tries de novo."[5]  Thus, the question submitted to the FDAB was simply whether or not Mr. Paul was correctly discharged.  No challenge is directed by any party therefor to the scope of the review adopted and applied by the FDAB below.  Accordingly, we do not consider that question.[6]

## CHARGES, FINDINGS AND ORDER

Mr. Paul was charged by his school superintendent upon the single statutory ground of inadequate performance.  ORS 342.865 (1)(g).[7]  The notice set forth the following in support of the statutory charge:

"1. Your communication with your students is ineffective and has resulted in low class morale and a high incidence of student drop-out from your classes.

"2. Your teaching techniques are limited to the extent that they have resulted in a lack of student motivation and have caused student disinterest.

---

[5] This concession appears to have been based on ORS 342.-905 (5), (6) and (7).

[6] For a different result under another statute, see: Phillips v. State Bd. of Higher Ed., 7 Or App 588, 490 P2d 1005 (1971), Sup Ct review denied (1972).

[7] ORS 342.865 (1):
"(1) No permanent teacher shall be dismissed except for:
"(a) Inefficiency;
"(b) Immorality;
"(c) Insubordination;
"(d) Neglect of duty;
"(e) Physical or mental incapacity;
"(f) Conviction of a felony or of a crime involving moral turpitude;
"(g) Inadequate performance;
"(h) Failure to comply with such reasonable requirements as the board may prescribe to show normal improvement and evidence of professional training and growth; or
"(i) Any cause which constitutes grounds for the revocation of such permanent teacher's teaching certificate."

"3. You have involved some students in disputes between yourself and the administration regarding the quality of your teaching performance.

"4. You have not brought about an acceptable standard of student involvement in your class activities.

"5. You have not exhibited sufficient change in your performance as a result of the many suggestions you have been given during the supervision program established and conducted by the administration of the buildings to which you have been assigned."

At the conclusion of the three-day hearing and consideration of the testimony adduced in connection therewith, the FDAB concluded: "Mr. Peter Paul's performance has not been shown to be inadequate as charged." In support of its conclusion that board also entered the following:

### "FINDINGS OF FACT

"1. There is evidence from which the Board could find that the teacher's communication with students was ineffective as charged in specification No. 1, and that the teacher's teaching techniques were limited as charged in specification No. 2. [Transcript references omitted.]

"There was, however, no convincing substantive evidence that such acts or omissions had resulted in low class morale and a high incidence of student drop-out from his classes as charged in specification No. 1, or resulted in a lack of student motivation and caused student disinterest as charged in specification No. 2.

"2. There was contradictory testimony on the original class size and the rate of drop-out. [Transcript references omitted.] There was no convincing evidence on the cause of the class size reduction.

"3. We find no evidence of involvement of the students in disputes with the administration that sufficiently reflects upon the teacher's adequacy of performance as specified in charge No. 3.

"4. Specification of charges No. 4 charges failure to bring about an acceptable standard of students involvement in class activities. The charge with its emphasis upon a 'standard' is ambiguous. There is evidence of student involvement in class activities, the teacher, however, is not required to adopt or formulate standards but only to meaningfully involve students in the educational process or class activities.

"5. Specification of charges No. 5 by concession of the School District's attorney, was not an adequate statement of fact for the statutory grounds of inadequate performance though it may have charged insubordination.

"For example:

"1. The teacher failed to follow suggestions with respect to teaching Project English. [Transcript references omitted.]

"2. The teacher failed to follow instructions with respect to use of a standardized grading system. [Transcript references omitted.]

and the following

## "ULTIMATE FINDINGS OF FACT®

"1. Specification of charges No.'s 1 and 2 relied upon to support the recommendation of the

---

® ORS 183.470 provides in part:

"* * * [A] final order shall be accompanied by findings of fact and conclusions of law. The findings of fact shall consist of a concise statement of the underlying facts supporting the findings as to each contested issue of fact and as to each ultimate fact required to support the agency's order. * * *"

The parties here agreed that since the FDAB had not itself adopted rules and regulations as authorized by ORS 342.915 (2),

District Superintendent are not true and substantiated and these facts do not, therefore, justify the statutory grounds cited as a reason for dismissal of the teacher Peter Paul.

"2. Specification of charges No. 3 is not true and substantiated and the evidence relied upon does not reflect upon the teacher's adequacy of performance.

"3. Specification of charges No. 4 is ambiguous. However, since there is substantial evidence that the teacher did involve students in class activities we find this charge is not true and substantiated and does not support the statutory charge of inadequate performance.

"4. Specification of charges No. 5 is not an adequate charge of 'inadequate performance' and therefore does not support the recommendation of the Superintendent for the dismissal of the teacher Peter Paul.

---

this proceeding would be carried on under the Model Rules of Practice and Procedure under the Administrative Procedures Act promulgated by the Attorney General effective October 1, 1971.

Rule 28 thereof relating to Final Orders on Contested Cases states:

"Final orders on contested cases shall be in writing and shall include the following:

"A. Rulings on admissibility of offered evidence.

"B. Findings of fact—those matters which are either agreed as fact or which, when disputed, are determined by the fact finder, on substantial evidence, to be a fact over contentions to the contrary.

"C. Conclusions of law—applications of the controlling law to the facts found and the legal results arising therefrom.

"D. Orders—the actions taken by the agency as a result of the findings of fact and conclusions of law."

Since the rule makes no mention of ultimate findings of fact we assume the FDAB's denomination of Ultimate Findings of Fact was in compliance with ORS 183.470, with which, of course, it was required to comply. Thus we conclude that each of its findings, however denominated, is evidentiary in nature. *See* Maeder Steel Products Co. v. Zanello, 109 Or 562, 571, 220 P 155 (1923).

## "CONCLUSIONS OF LAW

"Mr. Peter Paul's performance has not been shown to be inadequate as charged pursuant to ORS 342.865.

### "ORDER

"The dismissal of Peter Paul as a tenure teacher for Washington County School District No. 48 is not affirmed and he should be reinstated accordingly.

"DATED this 22nd day of August, 1972.

"*  *  *  *  *."

Thereupon it ordered that Mr. Paul be reinstated.

■ On appeal, petitioners urge first that Finding of Fact No. 1, supra, is unclear and implies that the FDAB did find Paul's teaching techniques to be ineffective as charged. Standing alone, the above language used by the FDAB, unclearly worded as it is, might well lend itself to such a position. However, we think it must be considered together with the FDAB's Ultimate Finding of Fact No. 1, supra, which expressly states:

"1. Specification of charges No's. 1 and 2 relied upon to support the recommendation of the District Superintendent *are not true and substantiated* *  *  *." (Emphasis supplied.)

Taken together, therefore, we conclude that the FDAB intended to and did find that the school district did not sustain its burden of showing that Mr. Paul was ineffective in communication with his students as charged in the school district's notice, nor that such communication, however denominated, substantially resulted either in low class morale or student dropout, nor, finally, that it significantly caused student disinterest or lack of motivation. It follows that the

strongly urged request for remand for clarification is denied.

An examination of the voluminous transcript reveals that substantial evidence was offered on both sides concerning specifications 1 and 2. That evidence was conflicting. Since "reliable, probative and substantial evidence" is present to support the challenged finding, we cannot substitute our judgment for that of the FDAB. ORS 183.480 (7)(d).

ORS 342.905 (6) states:

> "*If the Fair Dismissal Appeals Board finds that the facts relied on to support the recommendation of the district superintendent are untrue or unsubstantiated,* or if true and substantiated, are not adequate to justify the statutory grounds cited as reason for the dismissal, and so notifies the permanent teacher, the district superintendent, the district school board and the Superintendent of Public Instruction, *the teacher shall be reinstated* and the teacher shall receive his salary for the period between the effective date of the dismissal and the date of the order reinstating him. If the teacher was suspended prior to the effective date of dismissal, he shall also receive his salary for the uncompensated period of the suspension." (Emphasis supplied.)

Since the FDAB in its Ultimate Finding of Fact No. 1 found that the specifications relied on in charges 1 and 2 "are not true and substantiated," we do not find it necessary to consider whether, as petitioners contend, under ORS 342.905 (6), the charged ineffective communication was itself sufficient to constitute the statutory ground of "inadequate performance" (ORS 342.865 (1)(g)) relied upon. This question could only arise if the FDAB had found the charges true and

substantiated. Since it found otherwise, we do not reach that question.

It is clear from the combined Findings of Fact and Ultimate Findings of Fact that the FDAB found from the evidence that neither No. 3 nor No. 4 of the matters set forth in the notice of charges were true and substantiated. There is ample evidence to support these findings. We are, therefore, bound by them.

The fifth and final allegation in the notice of charges made by the school district against Mr. Paul was:

> "You have not exhibited sufficient change in your performance as a result of the many suggestions you have been given during the supervision program established and conducted by the administration of the buildings to which you have been assigned."

The FDAB in its Findings of Fact stated:

> "Specification of charges No. 5 by concession of the School District's attorney, was not an adequate statement of fact for the statutory grounds of inadequate performance though it may have charged insubordination."

■ The school board contends that it made no such concession. We disagree. In its opening statement to the FDAB, the transcript reveals the following:

> "[Mr. McClanahan, counsel for school district] * * * The real issues raised by the Notice of appeal, then, we believe, are: Whether, one, the facts are true and substantiated—they claim that they are not—and whether items three and five of the Superintendent's recommendations which are— item three relates to the involvement of students in disputes and item five relates to insufficient

change in performance—whether these are adequate legally. *I would say, first of all, with respect to number five, no contention is made here that that in and of itself would be sufficient.* I think a teacher's got to have—there's got to be a reason why he should change before it's his legal duty to change. So, *if the other items are not sustained,* why, *a clear fact that the teacher did not change, I think, would be inadequate ground.* \* \* \*" (Emphasis supplied.)

Since here the FDAB found as to each of the first four charges that it was neither true nor substantiated, it follows from the foregoing that the school board did concede that No. 5, standing alone, even if true and substantiated, would be an inadequate ground upon which to predicate a finding of inadequate performance under ORS 342.865 (1)(g).

The second major thrust of the appeal relates to certain rulings of the FDAB on matters of evidence. A principal one relates to the refusal of the FDAB to allow certain witnesses to testify as experts, and as such to express an opinion based upon the evidence. Consideration of the statutory scheme is necessary to the answer.

ORS 342.865 (2) provides:

"In determining whether the professional performance of a permanent teacher is adequate, consideration shall be given to regular and special evaluation reports prepared in accordance with the policy of the employing school district and to any written standards of performance which shall have been adopted by the board."

■ ORS 342.895 (2) provides, inter alia, that upon initiating dismissal proceedings, the district superintendent shall send a "notice" to the teacher setting

forth "the statutory grounds for dismissal." It then states:

"* * * If the statutory grounds specified are those specified in paragraph (a), (c), (d), (g) or (h) of subsection (1) of ORS 342.865, then *evidence shall be limited to those allegations supported by statements in the personnel file of the teacher on the date of the notice to recommend dismissal,* maintained as required in ORS 342.850. * * *" (Emphasis supplied.)

This case involves the charge of inadequate performance as specified in ORS 342.865 (1)(g) and is therefore subject to the above provision.

The FDAB interpreted this provision as limiting the evidence at the hearing to testimony relating to the "general subject" of those statements in the personnel file which were either made by or attributed to the testifying witness. The question is whether the evaluation reports must identify as well all witnesses called at the hearing.

Initially, we agree with petitioners that the legislature's choice of words "supported by statements" rather than, for instance, "limited by statements," on its face seems to require a broader interpretation of ORS 342.895 (2) than was given by the FDAB. However, to determine the *extent* that evidence must be "supported by statements in the personnel file * * * maintained as required in ORS 342.850," we first examine that statute.

"(1) The district superintendent of every common and union high school district having an average daily membership, as defined in ORS 327.-006, of more than 500 students in the district shall cause to have made at least annually an evaluation of performance for each teacher employed by the district *in order to allow the teacher and the dis-*

*trict to measure the teacher's development and growth in the teaching profession.* A form shall be prescribed by the State Board of Education and completed pursuant to rules adopted by the district school board. The person or persons making the evaluation must hold teaching certificates. The evaluation shall be signed by the school official who supervises the teacher and by the teacher. A copy of the evaluation shall be delivered to the teacher.

"(2) The annual evaluation reports shall be maintained in the personnel files of the district.

"(3) *The annual evaluation report shall be placed in the teacher's personnel file* only after reasonable notice to the teacher. Any explanation relating to the evaluation which the teacher desires to make shall be placed in the personnel file.

"(4) The personnel file shall be open for inspection by such teacher but shall be open only to such other persons as are officially designated by the board or by the teacher, in accordance with such rules and regulations as the board shall adopt." (Emphasis supplied.)

ORS 342.850 makes it clear that the primary purpose of teacher evaluations is to provide the teacher with guidance directed toward improvement rather than to build a case against him for dismissal. This guidance function is largely accomplished in an atmosphere of cooperation rather than of adversity and through an understanding of the criticisms rather than a knowledge of all the sources of the criticisms. In this context, pursuing the expensive and time-consuming burden of identifying every possible future witness in every evaluation report would, in our view, serve no useful purpose and might well prove inimical to its basic purpose—the improvement and development of the subject's teaching skills. *See also:* ORS 342.960 (2).

This construction of ORS 342.850 is further supported by evaluation guidelines adopted by the State Board of Education. These include the following:

"1. The primary purpose of evaluation and supervision of professional performance is to promote personal growth and competence, which, in turn, will result in the improvement of the instructional program.

"2. Realistically, evaluation and supervision cannot be separated from the possibility of dismissal or nonrenewal of contract. Whenever a dismissal or nonrenewal of contract is recommended due to incompetence, it must be based upon an official evaluation of performance.

"* * * * * *

"8. If evaluation and supervision are to be a useful means for improving professional performance, they must be conducted in an atmosphere which is free of threat and fear. Genuine efforts should be made to assist the staff member in improving his level of performance. When it becomes necessary to terminate a staff member's employment, there must be procedures established which guarantee due process.

"9. The individual or individuals within the school district who are responsible for evaluation for each professional should be clearly identified."

■ Although statutory interpretation is generally a question of law for a court to decide, in appropriate circumstances we give weight to administrative interpretations. *Rogers Const. Co. v. Hill*, 235 Or 352, 356, 384 P2d 219 (1963); *Baker v. Cameron*, 240 Or 354, 359, 401 P2d 691 (1965). We conclude that a teacher's personnel file need not necessarily identify all the sources of the subject matter discussed therein in order to be "maintained as required in ORS 342.850"

in order for evidence relating to such subject matter to be admissible.

With this background we examine the legislative history of ORS 342.895 (2). During Senate Education Committee meetings held on April 22 and 27, 1971, a question arose as to whether all experts must be identified in the personnel file as a prerequisite to their testifying at the hearing. A witness was there asked whether "the district [was] limited here to let's say bringing in [an] expert witness on the question of 'what does constitute inadequate performance.' " He answered, "It's got to be limited to the allegations. In other words * * * if the file says '* * * over a period of five years specific charges of inefficiency * * *,' you've got a right to ask somebody to give the opinion on those, but you can't dream up six more issues." All agreed.

■ Accordingly, we conclude that the provision of ORS 342.895 (2) above quoted relates to subject matter concerning which evidence may be received as distinguished from persons otherwise qualified to testify concerning such matters.[9] Specifically, we hold

[9] We note concerning evidence which may be offered by or on behalf of the teacher that ORS 342.915 (3) provides:

"At the hearing the permanent teacher shall have the right to be present and to be heard, to be represented by counsel and to present through witnesses any competent testimony relevant to the issue of whether facts as found by the Fair Dismissal Appeals Board and as relied on to support the recommendation of the district superintendent are true and substantiated and whether those facts justify the statutory grounds cited as reason for the dismissal and whether the procedures required by law have been followed."

In our view this construction is also consistent with ORS 342.960 (2), which provides:

"The procedure at the hearing shall be such as to permit and secure a full, fair and orderly hearing and to permit all

that a witness otherwise qualified as an expert who himself has not furnished information or data found in the personnel file is not thereby disqualified as a witness under ORS 342.895 (2). Nor is it necessary that such person be identified or otherwise referred to in the personnel file.

It remains, however, to examine the record to determine whether or not substantial error of a prejudicial nature concerning the FDAB evidentiary rulings appears.

In both their brief and in oral argument, petitioners, as they did before the FDAB, point to the witness James Carlile, as "probably the most important witness in this case." They contend that certain evidentiary rulings of the FDAB prevented him from placing his opinion concerning the adequacy of Mr. Paul's performance in the areas set forth in the notice of charges and his reasons therefor into evidence. We note first that Mr. Carlile's testimony occupied 37 pages of transcript and that he was next to the last witness called by the petitioners in their case-in-chief. At the end of his direct examination by petitioners, the record reveals the following:

"Q [By Mr. McClanahan, school district counsel] Are you familiar, Mr. Carlile, with what is generally recognized in the teaching profession in Oregon and the Beaverton area, as minimally suf-

---

relevant competent evidence to be received therein. The report of the panel of the committee shall be deemed to be competent evidence. * * *"

Thus it seems clear the legislature did not intend to limit the teacher in the production of evidence other than that it be relevant to the issues framed by the notice of charges and be otherwise competent. See also: ORS 183.450, n 10 herein.

ficient, adequate and professional performance in the following areas:

"CHAIRMAN RICHARDS [FDAB chairman]: Just a moment, counsel. (Pause.) The Board is going to rule that any further testimony by any single witness as to what the standards are is cumulative and repetitious and, therefore, we'll rule that line of questioning out of order with this witness or any further—

"MR. McCLANAHAN: I did not intend to ask him what they were, but I think I'm entitled to get his opinion and this is probably the most critical witness in the whole case.

"CHAIRMAN RICHARDS: You're entitled to get his opinion, in the opinion of the Board.

"BY MR. McCLANAHAN:

"Q In the following areas: Communicate—(1) Communication, in particular as it relates to clarity, directional presentation, explains expectations of the students, assignments and grades; (2) techniques, in particular as they relate to the monologue or lecture system or the use of varying methods and the directional aspects of his teaching techniques; (3) student involvement in class activities, with respect to those items; and (4) extent to which a competent teacher should respond to suggestions for change by responsible administrators in those areas?

"A Is the question—

"Q Are you familiar with what is generally recognized as sufficient and adequate?

"A Yes.

"Q Okay. Do you have an opinion, Mr. Carlile, concerning whether Mr. Paul, at Aloha, in the time that he was there, measured up to those minimum standards?

"A Yes.

"Q   What is that opinion?

"MR. ZAFIRATOS: Objection to it as being conjecture, and this witness being incompetent to testify as to it, not being a proper foundation laid for the introduction of the testimony and it being the ultimate fact.

"CHAIRMAN RICHARDS: Overruled.

"MR. McCLANAHAN: No further questions.

"A   (By witness) Do you want me to answer that question?

"MR. McCLANAHAN: Oh, excuse me. I'm sorry.

"MR. ZAFIRATOS: I'd really kind of object to the witness telling the lawyer what to ask.

"CHAIRMAN RICHARDS: He obviously needed to be reminded, counsel, so you may answer the question.

"BY MR. McCLANAHAN:

"Q   What is that opinion?

"A   I—based on my observations and conferences with Mr. Paul, I felt that he did not meet adequate standards in any of those areas.

"Q   Have you explained the reasons heretofore already in your testimony?

"A   I think so."

■ It will be noted that the question upon which the witness there gave his opinion specifically covered four of the five matters set forth in the notice of charges. The only one omitted, No. 3 in the notice of charges, clearly related to a matter which would not be established by opinion evidence. No claim is here made that the FDAB refused to allow this witness to offer relevant evidence as to that charge. Since Mr. Carlile was permitted to and did give his expert opinion on all the issues reasonably susceptible thereto

and by his own admission had previously explained the reasons therefor, the claims of error relating to his testimony are clearly without merit.

■ The other assignments of error also relate to alleged errors in evidentiary rulings. For example, petitioners contend error was committed because Mr. Squire, the principal of Aloha High School where Mr. Paul worked, after testifying for some 70 pages, was denied the right to respond to a question, "Do you have an opinion, without assuming those facts, do you just have a professional opinion on the subject of whether he [Mr. Paul] performed adequately?"

The record shows, however, shortly before that question, the following:

"Q [By Mr. McClanahan] Now, the—Mr. Squire, I'm going to ask you to assume for purposes of the next question, that the evaluation and —excuse me, the observation information contained in the personnel file previously detailed and listed by page number that you went through was accurate or valid as to each of these points that have any significance formulating opinion, and also assuming that those are valid and also based upon your personal observations and student-parent complaints that you referred to in your testimony, based on those things and nothing else, do you have an opinion concerning whether Mr. Paul's performance at Aloha High School was adequate and within the general standards that you've described?

"A Yes.

"* * * * *

"CHAIRMAN RICHARDS: It will be the ruling of the Board that you may ask the hypothetical question and include the reports of persons whom you intend to produce to testify concerning the reports that you are asking this witness to take into

consideration. Therefore, the objection will be overruled on that conditional basis.

"* * * * *

"Q [By Mr. McClanahan] Do you have such an opinion?
"A Yes.

"Q What is it?
"A Mr. Paul was inadequate to continue as a teacher at Aloha High School."

Not only was the ruling proper under ORS 342.895 (2), it is clear that there was no prejudice.

Other assignments relating to rulings on evidence either assert grounds not raised below, which we do not consider (*Groce v. Fidelity General Insurance,* 252 Or 296, 307, 448 P2d 554 (1968); *Miller v. Lillard,* 228 Or 202, 364 P2d 766 (1961); *State v. Latta,* 246 Or 218, 425 P2d 186 (1967); 88 CJS 189, Trial § 82c; Annotation, 89 ALR2d 279, 289 (1963); McCormick, Evidence 113, § 52 (hornbook series, 2d ed 1972)), disclose no abuse of discretion in instances where discretion as to admissibility is vested at the hearing level (*Meyer v. Harvey Aluminum,* 263 Or 487, 501 P2d 795 (1972); *Yundt v. D & D Bowl, Inc.,* 259 Or 247, 486 P2d 553 (1971); *Denny v. Warren,* 239 Or 401, 408, 398 P2d 123 (1964)), or in the light of the voluminous testimony and exhibits received were cumulative to other evidence; nor in our view do any of them disclose any substantial prejudice[⑩] to the petitioners.

---

[⑩] ORS 183.450 (1) provides in part:
"The rules of evidence as applied in equity cases in the circuit courts of this state shall be followed. Every agency shall provide for the exclusion of irrelevant, immaterial or unduly repetitious evidence, *but erroneous admission of evidence shall not preclude agency action on the record unless shown to have substantially prejudiced the rights of a party.* * * *" (Emphasis supplied.)

■ Finally, we note that petitioners, in their brief and on occasion in the testimony, refer to "standards of performance" as binding on the FDAB. ORS 342.-865 (2) incorporates any written "standards of performance which shall have been adopted by the board" as requiring consideration by the FDAB. It is conceded here that petitioner school board had not adopted written standards of performance relating to what constitutes inadequate—or adequate—performance of tenured teachers. Therefore, there were no "standards of performance" within the meaning of ORS 342.865 (2) which the FDAB was required by it to consider. If a school district seeks to apply standards of its own to tenured teachers, it is incumbent upon its board to adopt and publish them to such teachers.

The remaining assignments are without merit. Petitioner school district was accorded a full and fair hearing before the FDAB.

Affirmed.