Gertrude S. CARROLL, By and Through Margaret MILLER, the temporary guardian of the person of Gertrude S. Carroll and conservator of the estate of Gertrude S. Carroll, Appellant (Plaintiff),

v.

WYOMING PRODUCTION CREDIT ASSOCIATION, a corporation, Appellee (Defendant),

Carroll and Carroll, a corporation, and Howard T. Carroll (Defendants).

Gertrude S. CARROLL, By and Through Margaret MILLER, the temporary guardian of the person of Gertrude S. Carroll and conservator of the estate of Gertrude S. Carroll, Appellant (Plaintiff),

v.

The FEDERAL LAND BANK OF OMAHA, a corporation, Appellee (Defendant),

Carroll and Carroll, a corporation, and Howard T. Carroll (Defendants).

Nos. 87–33, 87–34.

Supreme Court of Wyoming.

June 2, 1988.

John J. Rooney and William D. Bagley (argued) of Rooney, Bagley, Hickey, Evans & Statkus, Cheyenne, for appellant in Nos. 87–33 and 87–34.

Jerry A. Yaap of Bishop, Bishop & Yaap, Casper, and Howard P. Olsen, Jr. (argued) of Simmons, Raymond, Olsen, Ediger, Selzer & Ballew, Scottsbluff, Neb., for appellee in Nos. 87–33 and 87–34.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

CARDINE, Justice.

Appellant, Gertrude Carroll, the majority shareholder of Carroll and Carroll, a Wyoming corporation, filed separate suits against appellees Wyoming Production Credit Association and Federal Land Bank of Omaha. She seeks to declare mortgages and accompanying notes, financing statements and security agreements of the corporation in favor of appellees void and to vacate and set aside judgments and decrees of foreclosure of the mortgages. She also seeks an award of damages for any conversion by appellees of property of the corporation pursuant to the judgments and decrees. The single issue raised by appellant is whether a mortgage that encumbers substantially all of the corporation's property, made by a director without shareholder approval, is valid. These consolidated appeals are taken from summary judgments foreclosing appellees' mortgages.

We affirm.

On January 13, 1955, Carroll and Carroll was incorporated in Wyoming with capital stock of $250,000 divided into 2,500 shares with a par value of $100 each. The corporate charter allows the corporation, among other things, "to borrow money, pledge its credit and property as security for loans or the purchase of merchandise and any and all other additional credits that may be necessary or beneficial in the conduct of [its] business." Three directors named at the time of incorporation were Gertrude S. Carroll, holding approximately two-thirds of the 1,832 outstanding shares, Frank N. Carroll (it is unclear from the record whether Frank owned any shares), and Howard T. Carroll, holding approximately one-third of the corporation's outstanding shares.

On January 21, 1971, Howard T. Carroll was elected president of the corporation. He has continued as president since that time. Gertrude Carroll was a director from the date of incorporation until January 27, 1981. From January 7, 1975 to January 27, 1981, however, her physical and mental health was such that she did not participate in corporate affairs or attend the meetings of the Board. On January 27, 1981, Howard T. Carroll, Teri K. Carroll, and Ruth E. Satra were elected directors and have continued as directors since that time. Gertrude Carroll remained the majority shareholder of the corporation at all times.

On December 1, 1982, and May 31, 1983, the corporation, through Howard T. Carroll and the other directors, executed two notes to Wyoming Production Credit Association (WPCA) in the amounts of $1,703,000 and $489,600. A similar note was executed on behalf of the corporation in favor of Federal Land Bank of Omaha (FLB) in the amount of $1,050,000. These notes were secured by mortgages and other security agreements encumbering all of the assets of the corporation. No shareholder meeting was called to discuss the encumbering of the corporation's assets, nor was any notice given to Gertrude Carroll. Each transaction, however, was authorized by

corporate resolution. The proceeds of the transactions were applied in part to the corporation and in part to other businesses in which Howard T. Carroll was interested.

In all the business transactions with WPCA and FLB, Howard T. Carroll represented that he was the majority shareholder of the corporation and had full authority to borrow funds and execute security instruments on behalf of the corporation. On September 30, 1985, Howard T. Carroll filed Chapter 11 bankruptcy on behalf of the corporation, swearing in the petition that he was the sole stockholder of the corporation, owning 2,100 shares of stock. He later corrected this representation while testifying in the bankruptcy court on October 28, 1985, stating that he owned only about 700 of the 2,200 outstanding shares, and that the balance of the stock was owned by his mother in trust.

Upon learning of the bankruptcy petition, WPCA and FLB filed foreclosure actions in the district court on the notes. The corporation defaulted by not answering the complaints, and the district court entered judgments and decrees of foreclosure against the corporation. Foreclosure proceedings are now pending.

On December 6, 1985, Margaret Miller was appointed temporary guardian of Gertrude Carroll and the conservator of her estate. In that capacity, Margaret Miller filed two actions in district court—the first against WPCA, the corporation, and Howard T. Carroll, and the second against FLB, the corporation, and Howard T. Carroll—alleging that Howard T. Carroll executed the notes without the approval or authorization of at least two-thirds of the stockholders of the corporation, as required by § 17–1–502, W.S.1977. Appellant asked the district court to declare the notes, mortgages and various financing statements and security agreements void, to vacate and set aside the judgments and decrees of foreclosure entered against the corporation, and to award damages to appellant for any conversion by WPCA and FLB of any of the properties of the corporation pursuant to the judgments and decrees.

Appellees WPCA and FLB answered, alleging that Howard T. Carroll and the corporation continuously misrepresented the true ownership of the stock of the corporation and Howard T. Carroll's authority to act on behalf of the corporation; that Howard T. Carroll presented a proper corporate resolution by the board of directors authorizing the borrowing and execution of the security documents; and that the action was barred by the statute of limitations, the doctrine of laches, and the doctrine of estoppel.

Appellant moved for partial summary judgment against WPCA and summary judgment against FLB. Appellees also filed motions for summary judgment with supporting affidavits and exhibits. The district court denied appellant's motion for partial summary judgment and entered summary judgments in favor of appellees. Appeal is taken from these summary judgments.

The purpose of summary judgment is to eliminate formal trials where only questions of law are involved. *Duffy v. Brown,* Wyo., 708 P.2d 433 (1985). Summary judgment is only appropriate when there is no genuine issue of material fact and the prevailing party is entitled to judgment as a matter of law. *Greaser v. Williams,* Wyo., 703 P.2d 327 (1985); *Hurst v. State,* Wyo., 698 P.2d 1130 (1985). A material fact is one which, if proved, would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. *Colorado National Bank v. Miles,* Wyo., 711 P.2d 390 (1985).

In this case we are asked to interpret §§ 17–1–501 and 17–1–502, W.S.1977, of the Wyoming Business Corporation Act. Generally, statutory interpretation is a question of law for the court. *School Dist. No. 48, Washington County v. Fair Dismissal Appeals Board,* 14 Or.App. 634, 514 P.2d 1114 (1973). See also *Noey v. Department of Environmental Conservation,* Alaska, 737 P.2d 796 (1987). In interpreting statutes, "[i]t is our duty to ascertain the intention of the legislature as completely as possible from the language used in

the statute itself," *State, Department of Revenue and Taxation, Motor Vehicle Division v. Andrews*, Wyo., 671 P.2d 1239, 1246 (1983), and "if such intent is expressed clearly and without ambiguity in the language of the statute, such intent must be given effect." *Oroz v. Hayes*, Wyo., 598 P.2d 432, 434 (1979).

In 1957, the Wyoming legislature adopted the Model Business Corporation Act (MBCA) which, with some modification, was titled the Wyoming Business Corporation Act. Sections 17-1-501 and 17-1-502, W.S.1977, were modeled after §§ 71 and 72, respectively, of the MBCA. In 1957, § 71 of the MBCA provided:

"The sale, lease, exchange, *mortgage*, pledge, or other disposition of all, or substantially all, the property and assets of a corporation, *when made in the usual and regular course of the business of the corporation, may be* made upon such terms and conditions and for such considerations * * * as shall be *authorized by its board of directors;* and in such case no authorization or consent of the shareholders shall be required." (Emphasis added.)

Section 72 provided:

"A sale, lease, exchange, *mortgage*, pledge, or other disposition of all, or substantially all, the property and assets, with or without the good will, of a corporation, *if not made in the usual and regular course of its business,* may be made upon such terms and conditions * * * as may be authorized * * * [upon]

$$* \quad * \quad * \quad * \quad * \quad *$$

"(c) * * * the affirmative vote of the holders of at least two-thirds of the outstanding shares of each class of shares entitled to vote as a class thereon and of the total outstanding shares." (Emphasis added.)

Both §§ 71 and 72 included within the disposition of assets a *mortgage* or pledge of those assets.

The Wyoming legislature, in enacting §§ 17-1-501 and 17-1-502, adopted the MBCA with a modification that is of extreme importance to resolution of the question here presented. Section 17-1-501, W.S.1977, provides:

"The sale, lease, exchange, *mortgage*, pledge or other disposition of all, or substantially all, the property and assets of a corporation, *when made in the usual and regular course of the business of the corporation,* may be made upon such terms and conditions and for such considerations * * * as shall be authorized by its board of directors; and in such case no authorization or consent of the shareholders shall be required." (Emphasis added.)

Section 17-1-502, W.S.1977, provides:

"(a) A sale, lease or exchange of all, or substantially all, the property and assets, with or without the good will, of a corporation, *if not made in the usual and regular course of its business,* may be made upon such terms and conditions and for such consideration * * * as may be authorized * * * [upon]

$$* \quad * \quad * \quad * \quad * \quad *$$

"(iii) * * * the affirmative vote of the holders of at least two-thirds (⅔) of the outstanding shares of each class of shares entitled to vote as a class thereon and of the total outstanding shares." (Emphasis added.)

The word "mortgage," present in § 72 of the MBCA, was deleted from the language of § 17-1-502. The change made by the legislature in enacting § 17-1-502 controls the disposition of this case. Appellant contends that the deliberate removal of "mortgage" from § 17-1-502 indicates the legislature's intention that the statutes together be read to provide that a mortgage of all or substantially all of the assets of the corporation by the board of directors be permitted *only* when made in the usual and regular course of business of the corporation. Otherwise, appellant contends, the consent of the shareholders is required. We disagree.

By declining to include "mortgage" in § 17-1-502, the legislature demonstrated an express intention that a mortgage would not be considered as a disposition of assets made outside the usual and regular course of its business. Sharehold-

er approval thus is not required for the giving of a mortgage by the corporation which, according to § 17–1–501, supra, is a transaction in the usual and regular course of business. Appellant invites this court to insert the word mortgage into § 17–1–502. We decline the invitation. The legislature deliberately left "mortgage" out of the statute. Omission of words from a statute must be considered intentional on the part of the legislature. *Matter of Adoption of Voss*, Wyo., 550 P.2d 481 (1976). Moreover, where the legislature has specifically used a word or a term in certain places in a statute and excluded it in another place, the court should not read that term into the section from which it was excluded. *Id.* Finally, " 'where a statute enumerates the subjects or things on which it is to operate, or the persons affected, * * * it is to be construed as excluding from its effect all those not expressly mentioned' " under the rule of "Expressio unius est exclusio alterius." *Town of Pine Bluffs v. State Board of Equalization*, 79 Wyo. 262, 333 P.2d 700, 708 (1958) (quoting 82 C.J.S. Statutes § 333 (1953)); see also *State v. Michael*, 111 Idaho 930, 729 P.2d 405 (1986).

In adopting § 17–1–502 in its present form, it is clear that the legislature had in mind the practicalities of corporate business finance. If a corporation were required to obtain shareholder approval for every mortgage or pledge of the corporation's property and assets, commerce would literally come to a standstill. "[I]t is a matter of common business practice for [a corporation] to mortgage * * * property in order to secure * * * necessary financing." *Sailer v. Land–Livestock–Recreation, Inc.*, 268 Or. 531, 522 P.2d 214, 216 (1974). Reading the statutes according to appellant's interpretation would abrogate the statutes' objective and purpose of promoting and encouraging free corporate enterprise.

The conclusion we reach here finds support in the revision of §§ 71 and 72 of the MBCA (renumbered in 1969 as §§ 78 and 79) wherein a "mortgage or pledge of assets" was deleted from former § 72 and inserted into former § 71. Now the borrowing and giving of mortgages or pledges require only appropriate action by the board of directors of the corporation. This revision was in recognition of the fact that a mortgage or pledge is essentially and substantively different from a sale, lease, exchange or other disposition of assets. See 3 Model Business Corporation Act Annotated 1320 (3rd ed. 1987). Thus, "mortgage[s] or pledge[s] of all or substantially all the corporation's assets [were treated] as a transfer in the usual and regular course of business and not subject to the requirement of shareholder approval." *Id.* at 1321.

As a matter of law, §§ 17–1–501 and 17–1–502 do not require shareholder approval for borrowing and mortgaging as security all or substantially all of a corporation's property and assets. No genuine issue of material fact exists. Summary judgment in favor of appellees was properly entered.

It is suggested that the legislature has declined to adopt the most recent amendment of the MBCA. We cannot help but wonder why the legislature should adopt the MBCA when § 17–1–502 already excludes mortgage from shareholder approval. The simple answer is that amendment is unnecessary, for § 17–1–502 applies only to "a sale, lease or exchange of all, or substantially all, the property [of a corporation]." The word mortgage does not appear in § 17–1–502. It would be the height of absurdity for the legislature to amend a statute to remove a word (mortgage) that does not appear in the statute. Sale, lease or exchange are words that have a plain meaning and are readily understood by all. They are not mortgages. It is our duty to apply statutes according to their plain meaning as we have done in this case. *State Board of Equalization v. Tenneco Oil Company*, Wyo., 694 P.2d 97 (1985).

Affirmed.

THOMAS, J., filed a concurring opinion.

URBIGKIT, J., filed a dissenting opinion.

MACY, J., filed a dissenting opinion in which URBIGKIT, J., joined.

THOMAS, Justice, concurring.

I agree with the result reached by the majority opinion in this case. Furthermore, I have no quarrel with the construction of the statutes set forth in the majority opinion. I find that I am impressed, however, with one of the contentions submitted by the Wyoming Production Credit Association and the Federal Land Bank of Omaha. Both insist, in their briefs, that the appellant, Gertrude S. Carroll, is not the real party in interest with respect to the claims asserted against them. This position is sound, and I would support the argument that the appellant is not the real party in interest with respect to the claims asserted in these cases.

The real party in interest question was raised by the Federal Land Bank of Omaha and the Wyoming Production Credit Association in their respective Amended Answers, each of which included a Motion to Dismiss. The question also was briefed, but the district court entered summary judgment in favor of each of these appellees rather than granting their respective motions to dismiss. In a Reply Brief of Appellant, filed in each case in response to the briefs of the respective appellees, the appellant rather summarily asserts that there is standing because of the *claim of fraud* against these appellees, and she argues that this is really a derivative action. The latter contention is a mischaracterization of the complaint.

The action which was pleaded on behalf of Mrs. Carroll sought to void conveyances by the corporation and requested individual damages for her with respect to property that had been converted by the appellees. The general rule appears to be that, in such instances, the cause of action is that of the corporation, which may be brought by a shareholder on behalf of the corporation in instances in which the responsible corporate officers will not pursue the action. 3A W. Fletcher, Cyclopedia of the Law of Private Corporations §§ 1282, 1283 at 606–609 (rev. perm. ed. 1986). There is an exception, which may be invoked in favor of a direct action against corporate officers, if the product of the derivative suit would result in the defaulting officers gaining control over the property or funds recovered because of their control positions in the corporation. 3A W. Fletcher, Cyclopedia of the Law of Private Corporations, supra, § 1282 at 608. Both the general rule and its exception have been recognized by this court. *Lynch v. Patterson,* Wyo., 701 P.2d 1126 (1985); *Centrella v. Morris,* Wyo., 597 P.2d 958 (1979); *Smith v. Stone,* 21 Wyo. 62, 128 P. 612 (1912). Applying those propositions to this lawsuit leads to the conclusion that the appellant properly could maintain this action in her own right as to the director and shareholder who is named as an appellee.

In effect, the reply brief suggests that the exception should be extended because of the participation by the Federal Land Bank of Omaha and the Wyoming Production Credit Association in the wrongful acts of the shareholder and director. The record, however, fails to support appellant's theory, and she cites no authority that justifies applying the exception to an outsider. Under these circumstances, her interests as a shareholder adequately are protected by the derivative action against third parties. The action against these two appellees was required to be pursued as a derivative suit.

The pleadings do not appear to assert a derivative claim. The corporation is named as an appellee, which hardly seems consistent with a derivative action on behalf of the corporation, and the claim for damages is by the appellant for any conversion by either the Wyoming Production Credit Association or the Federal Land Bank of Omaha of any properties of the corporation, Carroll and Carroll. If an action such as this may be pursued, how can appellees such as the Wyoming Production Credit Association and the Federal Land Bank of Omaha be protected against having to pay the same claims twice? It does not seem that the concepts of either res judicata or collateral estoppel would foreclose Carroll and Carroll from asserting a claim against these appellees based upon the same contentions as those presented by the appellant. Prior recovery by the appellant, however, would not bar the subsequent recov-

ery by the corporation under any concept of privity. See 3A W. Fletcher, Cyclopedia of the Law of Private Corporations, supra, § 1282 at 606–611. The only estoppel that could arise would be out of a derivative suit, which I submit this case is not.

I would affirm the trial court but upon the ground that the respective complaints failed to state a claim upon which relief can be granted.

URBIGKIT, Justice, dissenting.

In addition to agreement with the practical and clear analysis of the statutes detailed in dissent by Justice Macy, I further write to reject the unfortunate standard for corporate authority created by this court. This case is to be seen as a result-oriented conclusion creating a standard that is singularly dangerous to shareholders as consequently unprotected from future unwise, improvident or fraudulent director action. O'Neal's Oppression of Minority Shareholders, Second Edition § 5:20, p. 118.

What this court will have done is to rewrite limitations on director action which in the past required a two-thirds shareholder vote to sell, lease, or exchange substantially all of the corporate assets if not within the usual and regular course of business, and a majority vote for a similarly emplaced mortgage. We now eliminate that shareholder protection for the divestive mortgage. See *Commerce Trust Co. v. Chandler*, 284 F. 737 (1st Cir.1922). For the legislature to make such a change is discretional, albeit perhaps thoughtless in context of the Wyoming small-business corporate climate, but for this court to do this by overconstructive definition is singularly inappropriate. "The difference between legislative and judicial choice lies rather in the range of criteria that are available to the decisionmaker for the making of his choices." Christie, *An Essay on Discretion*, 1986 Duke L.J. 747 (1986).

The 1957 version of the Model Business Corporation Act existent when the Wyoming law was adopted as H.B. 3 and passed as Ch. 85, S.L. of Wyoming 1961 was revised in 1969, and now is rewritten to be the Revised Model Business Corpora-

tion Act of 1984. In the 1969 edition, § 78 (earlier § 71 in the 1957 edition), the reference to mortgages as still found in Wyoming law was removed. Additionally, in 1984 an explicit provision was included in a comparable section, 12.01, that a mortgage, whether or not in the regular course of business, did not require shareholder approval. 3 Model Business Corporation Act Annotated Third Edition § 12:01, p. 1318.

I would find it noteworthy that the Wyoming legislature has not made statutory changes to address shareholder approval of mortgages in the same fashion as did the Model Business Corporation Act of 1969 or as now does the revised act of 1984. What the legislature has not enacted this court now promulgates.

A recognized authority on corporate law, 8 Cavitch, Business Organizations, critiqued Wyoming law at § 163.03[1], p. 163-20:

"[Fn. 4] *Wyoming:* Wyo Stat §§ 17–1–501, 17–1–502. § 17–1–501: treats sales and mortgages alike."

and further lists Wyoming as a jurisdiction that has "declined explicitly to follow the Model Act":

"Their statutes treat mortgages and pledges in the same way as sales, leases, and exchanges; thus, in these jurisdictions, the relevant rules on shareholder approval apply alike to sales and mortgages." Id. at 163–21.

In concurrence with Justice Macy in his dissent, I would leave for the legislature any decision to set the Wyoming corporate law standard which would authorize director mortgage approval even if involving essentially all of the assets of the corporation and when not even in the usual and regular course of business.

MACY, Justice, dissenting, with whom URBIGKIT, Justice, joins.

I dissent. I disagree with the majority's reasoning that, by declining to include the word "mortgage" in § 17–1–502, W.S.1977, the legislature demonstrated an express intent to repeal the stockholder consent requirement contained in § 17–1–501, W.S.

1977, pertaining to mortgages made outside the usual and regular course of corporate business.

Section 17–1–129, W.S.1977, provides in material part that:

"If a quorum is present, *the affirmative vote of the majority* of the shares represented at the meeting and entitled to vote on the subject matter *shall be the act of the shareholders, unless the vote of a greater number * * * is required by this act * * *.*" (Emphasis added.)

When § 17–1–129 is read in pari materia with §§ 17–1–501 and 17–1–502, it is clear that the legislature intended to require the vote of a greater amount of the shares of stockholders to sell, lease, or exchange property of the corporation than to mortgage the property.