FARMERS' STATE BANK vs. HAUN ET AL.
and nine other cases.

(Nos. 1148-1157, April 15th, 1924; 224 Pac. 856.).

CORPORATIONS—RATIFICATION OF MANAGER'S ACTS.

1.  Where the authority of the manager of defendant corporation, owning a bank, to indorse the notes of the bank was limited to rediscount purposes, but his indorsements of such notes purported on their face to be unlimited and to bind defendant for payment of the amounts of the notes, *held*, that ratification by defendant of such indorsements which also contained no limitation of liability imposed a liability coextensive with that apparently imposed by the original indorsements, though the manager intended to keep within his authority.

APPEAL from the District Court, Fremont County; CYRUS O. BROWN, Judge.

On petition for rehearing.  For former opinion see 30 Wyo. 322; 222 Pac. 45.

*A. C. Allen* and *O. N. Gibson,* for plaintiff and respondent.

*W. C. Mentzer, H. C. Brome,* and *Joel F. Longnecker,* for defendant and appellant.

PER CURIAM.

A petition for rehearing has been filed herein, supported by exhaustive and able briefs.  The case is unique in its

facts, and important, and we have carefully considered the various points argued in the briefs.

When we stated in the original opinion that all of the stock in the bank had passed into the hands of stockholders of appellant as early as June 9, 1917, and that all of the stock appeared in the monthly balance sheet of appellant, as its property from July 1919 to May 31, 1921, we should have modified the word ''all'' in each instance; by ''substantially.'' The error is immaterial and does not affect the| principles discussed. It is conceded that after July, 1920, when the appellant acquired the seven shares of Martin W. Dimery, it owned all of the stock in the bank. We might also state in this connection that counsel for appellant are in error in stating in their brief that the note of Herbert J. States is not mentioned in schedule B, attached to the contract of June 9, 1921, with Nicholson.

We have been unable to change our conclusions as expressed in the original opinion. No good purpose could be subserved in again going over the ground there covered, but a few points, argued at length, deserve some additional comments.

1. We think, and have heretofore thought, that counsel for appellant put undue stress upon the question of consideration for the endorsements, a question which is distinct and separate from that of authority to make these endorsements. As to what constitutes a good consideration is discussed fully and ably in the case of Utah National Bank vs. Nelson, 38 Utah 169, 111 Pac. 907, and we need not do so here. The appellant owned the bank. The bank's gain was its gain; the bank's loss its loss. Hence appellant was vitally interested in the bank as a going concern. If the bank closed its doors, the stockholders of the bank were subject to| additional responsibility under section 5186, W. C. S. 1920. Appellant was most vitally concerned in making the best showing possible to the bank examiner of the state, and particularly at the time when the notes in suit are dated, for at that time a severe financial and economic depression

had commenced to grip the country, and there is evidence in the record that this condition affected the bank in question. Under these facts, it cannot be fairly held, aside from what was said in the original opinion, that there was no consideration for these endorsements.

2. The point is again argued strenuously that the contract with Nicholson provides for a guarantee for rediscount purposes only. We can only say that we have not changed our conclusion on this point. The contract, it is true, says that the appellant "will guarantee" the notes, and stress is laid on the word "will," as indicating that the guaranty was not intended to be absolute. The heading of schedule B states that the notes "are guaranteed," taking away all force from counsels' argument. On December 3, 1921, before this litigation arose, Kingery, the appellant's president, wrote to Luikart in part as follows:

"You advised me that it would be necessary to sue the Investors on account of their having guaranteed the aforesaid note, at the same time that Mr. K—— is sued. For your information will say that I am advised by my attorney that  *  *  *  you are not compelled to sue the guarantor at the same time you sue the man signing the note. On account of the interest we all have in the Investors it is my opinion  *  *  *  that for the present at least you sue Mr. K. alone."

In this letter the president of the appellant treats the guaranty as absolute and not for rediscount purposes only. We give this simply as additional illustration, and more could be given, that the practical construction put upon the contract by the parties was in conformity with the construction we have put upon it. We had not overlooked the fact that there are four notes in schedule B which are also in schedule "A". The latter contains a list of the rediscounts of the bank. These notes had to be taken care of from time to time, and the contract makes provision for that and Nicholson agreed to pay them. But this in no manner is in-

consistent with the duty of appellant to pay the notes after they ceased to be rediscounts.

3.   Counsel for appellant argue that "ratification cannot create any new liability or further obligation or additional authority than that which was 'attempted and intended' when the agent originally exercised his authority," and that if the ratification creates other and further liability and incurs other obligations, recovery thereon must be based on a suit, or at least a cause of action, separate from that based on the original contract.   Counsel ask:   "If such a contract (fixing liability on the Investors to the bank) did not exist, how could it be ratified?"   We are not at all sure that Luikart "attempted" or "intended" to limit the liability of appellant to rediscount purposes only. We were under the contrary impression in view of his sweeping testimony.   In any event, the endorsements in the case at bar purport on their face, to be unlimited and not made for the purpose of rediscount only, and purport to bind the endorser to payment of the amount of the note to the holder thereof.   The *contract* purporting to bind appellant existed.   We held in the original opinion that no authority to make that kind of a contract or endorsement had been shown.   Ratification takes the place of original authority.   And where the endorsements purport to bind the appellant, and a ratification of a previous endorsement is shown, and no limited liability appears from the ratification itself, we see no good reason why the ratification should not be construed as imposing liability co-extensive with the liability which the original contract of endorsement purports to impose.

*Rehearing Denied.*

NOTE—See 14A C. J. p. 392.