**COLORADO NATIONAL BANK,**
Appellant (Plaintiff),

v.

**Wilburn H. MILES, a/k/a Wilburn H. Miles, Jr., a/k/a Bill H. Miles; Dorothy M. Miles; and R and R Oil Company, Appellees (Defendants),**

**Continental Assurance Company; Texaco, Inc.; First Interstate Bank of Denver; and Sharon L. Kinnison, Trustee in Bankruptcy for Wilburn H. Miles, (Defendants).**

No. 85–72.

Supreme Court of Wyoming.

Dec. 12, 1985.

Peggy Taylor Pfau, of Daly, Maycock, Anderson & Taylor, P.C., Gillette, for appellant.

Dan R. Price, II, and James P. Schermetzler, of Morgan, Brorby, Price & Rob-

erts, Gillette, for appellee Dorothy M. Miles; Felix Sowada, of Preuit, Sowada & Hurich, Gillette, for appellee Wilburn H. Miles; Paul J. Drew, Gillette, for appellee R & R Oil Co.

Before THOMAS, C.J., BROWN and CARDINE, JJ., and ROONEY and GUTHRIE, JJ., Retired.

BROWN, Justice.

This appeal results from a summary judgment granted in an action to determine the claims of several parties to two separate parcels of real property. Wilburn H. Miles, Jr., filed a petition for bankruptcy in federal bankruptcy court. Stockmens Bank & Trust Company (Stockmens Bank) filed a motion to stay the bankruptcy proceedings in order to foreclose several of its mortgages on the two parcels of land. The bankruptcy proceedings were stayed, and Stockmens Bank filed an action to foreclose its mortgages and to have its interest in the property adjudged superior to Continental Assurance Company (Continental), Texaco, Inc. (Texaco), Petro-Chem, Inc. (Petro-Chem), R & R Oil Company (R & R), and Sharon Kinnison, trustee in bankruptcy for Wilburn Miles, now replaced by Cherie Norman as trustee. Continental was subsequently dismissed from the action since its debt was fully paid and the mortgage released. Texaco did not file an answer, having assigned its interest in the land to R & R. Petro-Chem assigned its interest to First Interstate Bank of Denver (First Interstate).

Appellant Colorado National Bank (CNB) subsequently purchased the mortgages held by Stockmens Bank and was substituted as plaintiff. There was a multitude of counterclaims and cross-claims filed by the parties. As noted above, the court granted summary judgment determining the respective rights of the parties. The court found, inter alia, that CNB should have judgment against Wilburn and Dorothy Miles on the two mortgages assigned to it by Stockmens Bank. The court also found that R & R could exercise its option to purchase one of the land parcels.

CNB appeals from the summary judgment and raises the following issues:

"I. Did the district court err in finding that the station property was not partnership property?

"II. Did the district court err in finding no ratification of the mortgages occurred in this case?

"III. Appellant has standing to complain as to the validity of the option.

"IV. Did the district court err in finding R & R Oil Company to have a valid option?

"V. Did the district court err in allowing R & R Oil Company to have specific performance of its option?

"VI. The district court erred in granting specific performance to R & R Oil Company.

"VII. The district court erred in finding that the proceeds received from the sale of the station property could not be reached by creditors.

"VIII. The court erred in not awarding the judgment against Wilburn H. Miles for attorney's fees and costs granted to appellant on both the station and the home property."

We will affirm.

The factual history in the case is complex. The real property involved consists of two parcels: one is the residential property of Wilburn and Dorothy Miles, and the other is a service station known as Miles Texaco.

The residential property was conveyed by warranty deed dated November 1, 1966, "to Wilburn and Dorothy Miles, husband and wife as tenants by the entireties." The service station property was also conveyed to Wilburn and Dorothy Miles as tenants by the entireties by deed dated September 19, 1968. A few months prior thereto, on April 1, 1968, Wilburn and Dorothy Miles leased the service station property to Texaco for a term of 15 years beginning July 1, 1969. The lease was recorded on August 15, 1968. The lease granted Texaco an option to purchase which stated in part:

" * * * Lessor hereby grants to Lessee the exclusive right, at lessee's option, to purchase the demised premises, together with all structures, improvements and encumbrances (including leases which were not on the premises at the date of this lease) at any time during the initial term and any extensions or renewals of the term of this lease for the sum of One Hundred Thousand dollars ($100,000.00) * * *."

On September 19, 1979, Texaco assigned the lease to R & R. This assignment was recorded on the same day. By letter dated June 26, 1984, R & R notified Wilburn and Dorothy Miles of its election to exercise the option to purchase the service station property.

Meanwhile, on June 7, 1976, Wilburn and Dorothy Miles mortgaged both parcels to Stockmens Bank. This mortgage was recorded on July 2, 1976. On July 30, 1982, Wilburn and Dorothy Miles again mortgaged both parcels to Stockmens Bank, said mortgage being recorded on August 18, 1982, and again on September 2, 1982. Both the 1976 and 1982 mortgages were assigned to CNB on November 13, 1984.

On July 10, 1978, Wilburn Miles, in separate instruments, mortgaged both the residential and the service station properties to CNB. The mortgages were recorded on July 12, 1978, and August 18, 1978, respectively. These mortgages were signed only by Wilburn Miles.

In its summary judgment, the district court found in part:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Colorado National Bank shall have judgment against Wilburn and Dorothy M. Miles for foreclosure of the mortgages recorded in Book 351 of Photos on page 159 and in Book 633 of Photos on page 470 assigned to it by Stockmens Bank and Trust Company in the amount of Eighty Two Thousand One Hundred Seven Dollars and Sixty Six Cents ($82,107.66), which amount represents Eighty One Thousand One Hundred Ninety Six Dollars and Thirty Cents ($81,196.30) owed as of December 19th, together with interest thereon at the rate of $41.425572 per day up through and including January 10, 1985.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that in addition to the foregoing amount, Colorado National Bank be allowed its attorneys fees and costs in foreclosing said mortgage in the amount of Six Hundred Eight Dollars ($608.00), said amount representing the amount expended up through and including January 21, 1985.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that R & R Oil Company shall deposit the option purchase price of One Hundred Thousand Dollars ($100,000.00) with the clerk of this court;

"Said money shall be distributed as follows:

"A. Eighty Two Thousand One Hundred Seven Dollars and Sixty Six Cents ($82,107.66) plus interest at the rate of 10% per annum from January 10, 1985 to date of receipt by the clerk of court plus attorneys fees and costs in the amount of Six Hundred Eight Dollars ($608.00) and interest thereon at the rate of 10% from January 21st to the date of receipt by the clerk of court to Colorado National Bank in full satisfaction of the claims it purchased from Stockmens Bank and Trust Company and the judgment against Wilburn H. Miles and Dorothy M. Miles.

"B. The remaining portion of the $100,000.00 shall be held for twenty (20) days with any party free to petition the Bankruptcy Court for an order directing disposition of the funds, for other proposed disposition, or for such other action that may be properly initiated and if no such action is taken, the remaining funds are to be paid to Wilburn H. Miles and Dorothy M. Miles, husband and wife, as tenants by the entirety.

\*    \*    \*    \*    \*    \*

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that R & R Oil Company has properly exercised its option to purchase the property herein-

after described and upon payment of $100,000.00 to the clerk of court, Wilburn H. Miles and Dorothy M. Miles shall convey the property to R & R Oil Company which shall be free and clear of the claims of all the other parties to this action. * * *

*       *       *       *       *       *

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Colorado National Bank has no standing, in light of the court's ruling with respect to the mortgages it holds which did not come from Stockmens Bank, to block the exercise of the option by R & R Oil Company."

In sum, the court found that CNB was entitled to judgment on the mortgages dated June 7, 1976, and July 30, 1982, assigned to CNB from Stockmens Bank. The court also found that R & R had validly exercised its option to purchase the service station. And the court found the two mortgages of July 10, 1978, only executed by Wilburn Miles to CNB could not block R & R's exercise of its option.

■ When reviewing a summary judgment on appeal, we examine the judgment in the same light as did the district court, using the same material and information. *Randolph v. Gilpatrick Construction Company, Inc.*, Wyo., 702 P.2d 142 (1985); and *Lane Company v. Busch Development, Inc.*, Wyo., 662 P.2d 419 (1983). A party moving for summary judgment has the burden of showing there is no genuine issue of material fact. *Dudley v. East Ridge Development Company*, Wyo., 694 P.2d 113 (1985). A material fact is one which, if proved, would have the effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties. *Samuel Mares Post No. 8, American Legion, Department of Wyoming v. Board of County Commissioners of the County of Converse*, Wyo., 697 P.2d 1040 (1985). We view the record from the vantage point most favorable to the party opposing the motion, giving to him all favorable inferences which may be drawn from the facts.

*Noonan v. Texaco, Inc.*, 713 P.2d 160 (Wyo.1986) and *Reno Livestock Corporation v. Sun Oil Company* (Delaware), Wyo., 638 P.2d 147 (1981).

I

In its first issue, appellant CNB asks whether the district court erred in determining that the service station property was not partnership property. Appellee R & R states the argument thusly: "The District Court properly found that the mortgages granted to the appellant Colorado National Bank are unenforceable."

■ Appellant's argument that the service station property was partnership property and therefore one partner (Wilburn Miles) could encumber the property is misplaced. As noted earlier, the warranty deed of September 19, 1968, conveyed the service station property to Wilburn and Dorothy Miles "as tenants by the entireties." The law in this state regarding alienation of property held by a tenancy by the entirety is clear. In *Ward Terry and Company v. Hensen*, 75 Wyo. 444, 297 P.2d 213, 219–220 (1956), we said:

"* * * In the absence of an agreement to the contrary the income, rents and profits of an estate by the entirety are an integral, indivisible part thereof and frequently are the most important part. The estate itself, title and fee thereof, is indivisible between husband and wife and cannot be alienated or in any way disposed of unless they agree to the contrary. That indivisibility must logically extend to every part of the estate including the rents, income and profits thereof and hence neither spouse would alone be able to divest the other thereof voluntarily or involuntarily against the wishes of the other during the life of both. * * * "

Professor E. George Rudolph, in his book entitled The Wyoming Law of Real Mortgages, p. 9 (Wyoming Law Institute 1969), states the following regarding tenancies by the entirety:

"* * * It is sufficient to note two of the principal characteristics of such tenancies. Both spouses must join in a deed to

have an effective conveyance and, secondly, property held in such fashion is not subject to execution or other creditor's process for the separate debts of one of the spouses. * * * *"

It is clear from the deeds that both parcels of land were held by Wilburn and Dorothy Miles as husband and wife, tenants by the entireties. When Wilburn Miles alone mortgaged the properties to CNB, he did so on his own, without his wife's consent.

"There can be no severance of an estate by the entireties by the act of either spouse alone, and hence, neither can convey or dispose of any part of it so as to effect such a severance, though they may terminate the estate by a joint conveyance of the property. * * * *" 41 Am. Jur.2d Husband and Wife § 71, p. 73 (1968).

Appellant contends that Wilburn Miles' mortgages to CNB were valid transfers of partnership property under § 17-13-203, W.S.1977. Appellant also cites *State Bank of Wheatland v. Bagley Bros.*, 44 Wyo. 244, 11 P.2d 572, reh. denied 44 Wyo. 456, 13 P.2d 564 (1932), wherein two brothers had a partnership, one brother died and the other brother executed several mortgages to pay off partnership debts. Suffice it to say that such authority has no application to the present case because we are not dealing with property held by a partnership, per se, but rather property held in an estate by the entirety.

Furthermore, Wilburn Miles did not purport to convey to CNB an interest in the entire property. Rather, the language in the mortgages specifically states that Wilburn Miles "holds an undivided one-half interest in the said premises."

We think the trial court was correct in finding the two mortgages executed by Wilburn Miles alone were invalid and did not constitute a valid transfer of the interest in property held by tenants by the entireties.

II

In its second issue, appellant asks whether the district court erred in finding Dorothy Miles had not ratified the mortgages executed to CNB by Wilburn Miles. Appellant asserts that although Dorothy Miles did not sign the mortgages executed by Wilburn Miles, she nevertheless ratified the mortgages by executing a later mortgage in favor of Stockmens Bank. The language in the later mortgage to Stockmens Bank upon which appellant relies is as follows:

"SUBJECT TO A MORTGAGE on Parcel I in the amount of $21,000.00 executed by Wilburn H. Miles in favor of The Colorado National Bank of Denver, A National Bank Association, dated 10 July 1978 and recorded 12 July 1978 in Book 427 of Photos, page 233 of the records of Campbell County, Wyoming.

\* \* \* \* \* \*

"SUBJECT TO A MORTGAGE on Parcel II in the amount of $21,000.00 executed by Wilburn H. Miles in favor of the Colorado National Bank of Denver, dated 10 July 1978 and recorded 18 August 1978 in Book 433 of Photos, page 349 of records of Campbell County, Wyoming."

We have previously defined ratification as

" * * * the subsequent adoption and affirmance by one person of an act which another, without authority, has previously assumed to do for him, while purporting to act as his agent. * * * *" *Farmers' State Bank of Riverton v. Haun*, 30 Wyo. 322, 222 P. 45, 51, reh. denied 31 Wyo. 201, 224 P. 856 (1924).

A party alleging ratification has the burden of coming forth with adequate proof of such. *Kover v. Hufsmith*, Wyo., 496 P.2d 908 (1972); and *McConnell v. Dixon*, 68 Wyo. 301, 233 P.2d 877 (1951). Included in such burden is the need to prove the principal had full and complete knowledge of all material facts of the transactions and that the principal intended to ratify the acts of his agent. *Kover v. Hufsmith*, supra; *Farmers' State Bank of Riverton v. Haun*, supra.

In *Cates v. Daniels*, Wyo., 628 P.2d 862 (1981), this court found that a contract to purchase real estate signed only by the husband was unenforceable since the wife had not signed the contract, had not authorized her husband to act as her agent, and had not ratified the contract. The court quoted § 16-1-101, W.S.1977, which requires an agreement or contract for the sale of real estate to be "in writing, and subscribed by the party to be charged therewith." The court then found no ratification by the wife of the contract to purchase real estate signed only by the husband:

> "Plaintiff Belva S. Daniels did not execute the contract for the purchase of Lot 30 nor did she give her husband written authority to execute said purchase agreement. The trial court correctly found that Belva S. Daniels did not ratify or adopt the purchase agreement for the purchase of Lot 30.

> * * * * * *

> "The trial court in ¶ 15 of the judgment found that Belva S. Daniels did not constitute her husband, Charles E. Daniels, as her agent to purchase Lot 30. She was not a party to the contract to purchase Lot 30 and did not give her husband written authority to sign the contract for her. In *Wallis v. Bosler*, [70 Wyo. 129, 246 P.2d 771 (1952)], this court made it clear that for a person to be liable on a contract, he must be a party to the contract or must have given his agent written authority to sign the agreement on his behalf." Id., at 867.

■ We cannot find that Dorothy Miles ratified the mortgages executed by Wilburn Miles simply by signing a later mortgage which merely recited the former mortgages unsigned by her. Furthermore, it does not seem that Wilburn Miles was acting as Dorothy's agent when he executed the two mortgages in favor of CNB. He only purported to convey his undivided one-half interest in the property.

As R & R states in its brief:

> "What the appellant argues in effect is that by mortgaging her property to the

Stockmens Bank and Trust Company Dorothy M. Miles conveyed an interest in that property to the appellant even though neither the later mortgage to the Stockmens Bank nor the earlier mortgage to the appellant contains any language of grant to the appellant of Dorothy M. Miles' interest and even though Dorothy M. Miles was never a party to any conveyance to the appellant."

We think the trial court was correct in its determination that the two mortgages executed only by Wilburn Miles in favor of CNB were invalid. Dorothy Miles did not sign the mortgages and there simply is no showing that Dorothy Miles agreed to the mortgages or ratified them in any way. Such agreement is necessary to effect a valid transfer of property held by an estate by the entirety.

Our decision in appellant's first and second issues makes it unnecessary for us to address the other issues in detail. The district court ruled that since the two mortgages executed by Wilburn Miles alone in favor of CNB were invalid, the appellant had no standing to contest R & R's option. Since we have upheld the district court's judgment, we need not address the issues raised by appellant regarding R & R's option.

■ In its seventh issue appellant claims the district court erred in finding the proceeds from the sale of the station property could not be reached by creditors. It is difficult to see how appellants come to this conclusion when the court stated in its judgment, quoted above, that the remainder of such proceeds would be held for twenty days "with any party free to petition the bankruptcy court for an order directing disposition of the funds." Such a ruling does not mean the proceeds could not be reached by CNB. Since the court found, and we agree, that the two mortgages held by CNB executed only by Wilburn Miles could not encumber real property held by tenants by the entireties, such holding does not preclude CNB from making a claim to the bankruptcy court for

such proceeds. The two mortgages signed only by Wilburn Miles purported to mortgage real property as security for the underlying obligation, represented by a promissory note. The district court's ruling that .the real property could not be mortgaged as security for Wilburn Miles' debt did not invalidate the promissory note. See, e.g., 55 Am.Jur.2d Mortgages § 135 (1971).

Affirmed.